OLIVE B. AND J. M. JOHNSON v. FANNY TOWNSEND.[1]

July 5, 1935.

No. 30,361.

*Mitchell, Gillette, Nye & Harries,* for appellant.
*J. E. McKenna,* for respondents.

LORING, JUSTICE.

Defendant appeals from the order denying her motion in the alternative for judgment notwithstanding the verdict or for a new trial in each case.

[1]Reported in 261 N. W. 859.

Plaintiff Olive B. Johnson and defendant are sisters. The former was injured while a passenger in a car driven by the latter. The action is to recover damages for such injuries, it being claimed that they were caused by defendant's negligent driving. The husband of plaintiff also sued defendant to recover the damages resulting to him from his wife's injuries. The two actions were tried as one. Verdicts were returned for the plaintiffs. The assignments of error in this court present only two questions. (1) Is there sufficient evidence to sustain the finding of actionable negligence? (2) Did the statement in the charge, that there was a sharp dispute in the evidence as to there being room to pass the meeting car without going on the oiled part of the road, prejudice defendant?

We need not refer to the husband's case. In September, 1933, plaintiff went by rail from her home in Duluth, this state, to New York City to assist defendant, who was to drive from there in an automobile with her two children, nine years and nine months of age, to Santa Fe, New Mexico. The trip was made without mishap, defendant driving most of the way, plaintiff occasionally for 50 miles or less at a time. Before returning to her home plaintiff was asked to accompany defendant and her children to Albuquerque to do some shopping. They took the automobile, defendant driving. When 30 miles south of Santa Fe, they met a crew oiling the roadway. Mr. Clements, in charge of the oiling, flagged them down and indicated that they should travel carefully and on the east or left side of the road. Defendant slowed down and passed onto the east half of the road to the top of the grade—a distance variously estimated from 50 feet to 200 yards—when she observed a car coming toward her. The roadway was 20 feet wide with shoulders on either side about three feet in width. On the west half of the road oil had just been spread. The east half was dry. The roadway was hard-surfaced with the center somewhat crowned. Defendant did not think there was room for the approaching car safely to pass if she remained on the east or dry side of the road, and she attempted to return to her side. The moment the front of her car entered the oiled portion she lost control. It slued around and slid into the right-hand ditch with the car headed

back. Defendant admits that she got excited and lost her head when she realized that the car could not be controlled. The thought that all might be killed made her frantic. Neither plaintiff nor defendant recollects clearly what took place except that the car slued around and tipped over in the ditch. Plaintiff's left wrist was fractured. No one else in the car was severely hurt. There was a slight dent on the body of the car, but no glass was broken, and, on being righted and pulled back onto the roadway, it was driven back to Santa Fe on its own power.

The complaint charged defendant with negligence in operating with defective brakes, failure to stop so as to allow the approaching car to pass, excessive speed, and driving the car onto the freshly oiled part of the road. There was no evidence at all to show defective brakes. No testimony is found from which it could be inferred that ordinary care required defendant to stop her car upon the dry portion of the road to let the approaching car pass. Neither plaintiff nor defendant could give any reliable estimate of the speed of the car immediately prior to the accident; but the two men in charge of the oiling, who observed the driving from the time defendant was directed to go onto the east half of the road until the car slued into the ditch, testified that the speed was between 10 and 15 miles an hour, and surely that rate in and by itself could not be found an excessive or negligent rate. So there remains only the alleged negligence of driving upon the freshly oiled part of the road. The roadway, 20 feet wide, was hard-surfaced or macadam, as defendant called it, with shoulders on both sides of two to three feet in width. The west half was freshly oiled, and the east half was dry. Defendant was directed by the road crew to slow down and drive on the east side. She did as directed and had proceeded on that side less than 200 yards when she saw a car approaching. She knew that she was on the wrong side of the road and that if she stayed there on the dry part the meeting car could not pass unless it was driven partly on the shoulder. She was in that position through no fault or negligence of her own. It was her duty to yield enough of the road on her left to allow the approaching car free passage. In her keeping was the safety of her

children, her sister, and herself. The danger to which she was exposed was in full view. That she realized this peril is evident from the fact that she at once sought to avoid it by passing to her side of the road—the oiled part. She had to act quickly. In that situation the law is that one, suddenly confronted by a peril, through no fault of his own, who in the attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions. While it is common knowledge that the oil usually applied on highways is slimy, we think it cannot be said that drivers generally know it to create dangerous road conditions at slow rates of speed. When the surface is porous it has no effect on the control of the car. Plaintiff offered no evidence at all tending to show that the oil generally applied upon roads imperils the operation of motor vehicles. The only testimony as to the effect of such oil on driving conditions came from defendant's witness Mr. Clements, who testified:

"If you have to get in the oil, you better go angling across the oil without turning either front wheel any more than you have to until you get at least two wheels on the dry shoulder; otherwise, why, it is likely to turn out to be a fatal accident because it is very slippery. And don't apply brakes because that makes it lots worse, you see. You know that by driving on ice. You apply the brake on an ordinary tire on a car and you know how it skids, and oil is worse than ice.

Q. "Is a car inclined to slide and slip even though traveling very slowly and being driven very slowly and being driven very carefully?

A. "It is, where all four wheels are on fresh oil."

This was from a witness engaged in the business of oiling roads. He was not speaking as to the knowledge or experience possessed by the ordinary driver. Defendant testified she had had no experience with oil on a hard-surfaced road. The quoted testimony is that a car, though driven very slowly and very carefully, gets

out of control if on a freshly oiled road. A majority of the court are of the opinion that, since the record shows that defendant had no knowledge that it was dangerous to drive a car slowly and carefully onto a freshly oiled part of a hard-surfaced highway to escape a threatened danger, and there is no testimony that the ordinary driver knows that it is dangerous so to do, the verdict is not sustained by the evidence, and since it is not probable that more evidence to establish negligence is available, judgment should be ordered for defendant.

The order is reversed with direction to the court below to enter a judgment for defendant in each case notwithstanding the verdict.

HOLT, JUSTICE (dissenting).

In my opinion this court is usurping the functions of the jury. I therefore dissent.

DEVANEY, CHIEF JUSTICE, and HILTON, JUSTICE (dissenting).
We agree with the dissent.