# WILLIAM MINDER v. ALFRED PETERSON AND ANOTHER, COPARTNERS d.b.a. GOODHUE COUNTY LIME SPREADER SERVICE, AND ANOTHER.

*93 N. W. (2d) 699.*

December 19, 1958—No. 37,466.

*Holst, Erickson, Vogel & Richardson,* for appellant.
*Swensen & Miley* and *Thomas J. Burke,* for respondents.

KNUTSON, JUSTICE.
This case arises out of a collision between an automobile owned and

operated by plaintiff and a Ford truck owned by defendants Alfred Peterson and Charles Lair and driven by defendant Raymond Poncelet at the time of the collision.

Defendants Peterson and Lair are engaged as copartners in business under the name of Goodhue County Lime Spreader Service. Prior to the collision, defendant Poncelet had been employed by them as a driver of one of their trucks in hauling lime.

The collision occurred in the intersection of Goodhue County Highway No. 4, which runs north and south, and Township Road No. 8, which runs east and west. The two roads intersect at right angles. Neither was protected by a stop sign. Commencing about 500 feet west of the intersection there is a downgrade of 2.8 feet per 100 feet on the township road. Vehicles approaching on County Highway No. 4 at a point approximately 260 feet south of the intersection could be seen by vehicles on the township road at least 250 feet west of the intersection.

On November 8, 1955, defendant Poncelet was driving a Ford truck owned by defendants Peterson and Lair on Township Road No. 8 in an easterly direction. The truck weighed 7,000 pounds and was loaded with 7 tons of lime. At the same time plaintiff was driving his automobile north on County Road No. 4. Poncelet testified that as he approached the intersection he was driving at a speed of about 40 miles per hour. As he came over a knoll about 500 feet from the intersection, he applied his brakes and the truck slowed down. When he was about 165 feet from the intersection he saw plaintiff's car approaching from the south. It was then about 270 feet from the intersection. Poncelet then applied his brakes harder and discovered for the first time that the brakes would not hold the truck and he was unable to stop. He then sounded his horn. He entered the intersection traveling at a speed of about 20 to 25 miles per hour and collided with the left side of plaintiff's car.

Poncelet had been employed by Peterson and Lair for about a week prior to this collision. About 5 days prior to the accident he had reported to his employers that he was having trouble with the brakes on the truck. Peterson, who had no special training as a mechanic but knew something about brakes on trucks from experience, examined the brakes and found that the brake fluid in the master cylinder was down

to about three-fourths of its proper level. He filled the cylinder and tested the brakes and found them to be working properly. Poncelet testified that he did not know what, if anything, had been done to the brakes but that he noticed that they worked better. He had no further difficulty with them, even during the morning of the accident, up to the time that he approached this intersection.

After the accident, defendant Peterson examined the brakes and found the brake lining to be in good shape, but he did find some brake fluid on the outside of one of the brakedrums.

William Avery, a deputy sheriff, testified that he had investigated the accident and that after the collision he found no brakes on the truck when he depressed the brake pedal. He further testified that Poncelet had told him soon after the accident "that the brakes had to be pumped and that they possibly woudn't catch until they were near the bottom of the downward stroke of the brake pedal."

The case was submitted to the jury on a special verdict. The jury found that neither plaintiff nor defendants were negligent. Based on the special verdict, the trial court entered its order for judgment for defendants. Thereafter plaintiff moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. This appeal is from an order denying such motion.

It is the contention of plaintiff (1) that he was entitled to a directed verdict on the issue of liability on the ground that defendants were guilty of negligence as a matter of law and that he is now entitled to judgment notwithstanding the verdict; (2) that if plaintiff is not entitled to judgment notwithstanding the verdict he is entitled to a new trial for the reason that the court erred in submitting to the jury the emergency rule; and (3) that the court erred in denying him a new trial based on newly discovered evidence.

Plaintiff's first contention that he was entitled to a directed verdict and is now entitled to judgment notwithstanding the verdict is based on the claim that the evidence conclusively established violation of M. S. A. 169.67[1] and 169.20[2] and that, there being no excuse or justification

---

[1]Those portions of § 169.67 involved here read:

Subd. 1. "Every motor vehicle, * * * when operated upon a highway, shall

shown, it follows as a matter of law that defendants were negligent.

■ Plaintiff's right to a directed verdict must be tested in the light of well-established rules of law that a motion for a directed verdict presents a question of law only. It contemplates, for the purposes of the motion, the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence. When the motion is made on the ground of a manifest preponderance of the evidence, it should be denied if different persons might reasonably draw different conclusions from the evidence.[3]

■ Here the evidence shows that about 5 days prior to the accident Poncelet reported to his employers that the brakes on the truck were not working properly. They were then checked and repaired by Peterson, after which they gave no further trouble until immediately before the accident occurred. Plaintiff's entire argument is premised upon the assumption that Poncelet knew or should have known that the brakes were defective as he approached this intersection. He insists on ignoring the testimony of Poncelet to the contrary. It is true that Deputy Sheriff Avery testified that he investigated the accident and that—

"* * * after I had completed my other investigation of taking measurements of the scene and made some notes, I then talked to Mr. Ray Poncelet who informed me that he was the driver of the truck * * * and I asked him about the accident. I had checked the truck on the

be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels."

Subd. 5. "All brakes shall be maintained in good working order and shall be so adjusted as to operate as equally as practicable with respect to the wheels on opposite sides of the vehicle."

[2] § 169.20, subd. 1. "When two vehicles enter an uncontrolled intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

[3] See, Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; 19 Dunnell, Dig. (3 ed.) § 9764.

scene and the brakes on the truck and I couldn't find any brake on the truck when I depressed the brake pedal and I asked him about the brakes and he stated to me that the brakes had to be pumped and that they possibly wouldn't catch until they were near the bottom of the downward stroke of the brake pedal."

In reviewing this testimony, the trial court in its memorandum in connection with its order denying the motion for judgment notwithstanding the verdict was of the opinion that "it is not clear as to whether the defendant driver was referring to the condition of the brakes as he found them just *before* the accident, or whether it purports to cover an earlier time." It seems clear to us that this analysis of this testimony is correct, but, even if we assume that the testimony related to the condition of the brakes prior to a time immediately preceding the accident, the jury still was not bound to accept it as conclusive in view of the testimony of Poncelet that he had no difficulty with the brakes during the morning of the accident or until immediately prior to the collision. As was said in Ryan v. Griffin, 241 Minn. 91, 98, 62 N. W. (2d) 504, 509:

"* * * It is not for the trial court to accept a· part of the testimony of a witness and reject the remainder. That is the province of the jury, the jury being the exclusive judges of the evidence and the credibility of the witnesses."

Obviously the jury accepted the testimony of Poncelet as true, as it had a right to do, and, based on the evidence as a whole, it cannot be said as a matter of law that Poncelet knew or should have known that his brakes would not respond as he approached the intersection. Clearly, the evidence presented a fact issue for the jury's determination on this issue.

The evidence in this case in that respect distinguishes the case from Lee v. Zaske, 213 Minn. 244, 6 N. W. (2d) 793, upon which plaintiff largely relies, for in that case it conclusively appeared that defendant knew he was driving a vehicle with defective brakes. Here, the evidence does not conclusively establish that to be a fact.

For the same reasons as stated above, the evidence presented a fact question for the jury's determination as to whether there was sufficient excuse or justification to overcome the prima facie case of negligence

established by showing a violation of the statute requiring Poncelet to yield the right-of-way to plaintiff.

■ Plaintiff contends that if he is not entitled to judgment notwithstanding the verdict he is entitled to a new trial. His claim in that respect rests principally upon the alleged error of the court in submitting the sudden-emergency rule to the jury. No claim is made that the rule was not properly stated, but the claim is that it was not applicable here at all for a number of reasons. Plaintiff took no exception to the court's charge in this respect but did assert the giving of the emergency rule as error in his motion for a new trial in general terms.[4] We will assume that it is properly before us.[5]

In the first place, plaintiff contends that the emergency rule is not applicable here because, he argues, if there was any emergency, it was created by defendants' own act. This position is again based on the assumption that Poncelet knew or should have known that the brakes were defective. We have already discussed that matter above, and there is no need of repeating what we have already said. Inasmuch as we are convinced that there was a fact question for the jury's consideration as to whether Poncelet knew or should have known that the brakes were defective, it would follow that the instruction was proper and applicable if the jury found that Poncelet did not know, or should not have known, that his brakes would not respond until it was too late to do anything about it. The trial court properly instructed the jury as to how to apply the emergency rule and under what circumstances it would come into play. Where the evidence is such that the jury may find either way on the question of whether a litigant has created an emergency, it is proper to instruct the jury on the emergency rule with directions that it is to be applied only if the jury finds that the emergency was not created by the one who seeks to invoke the rule.[6]

---

[4] The assignment in the motion for a new trial is stated: "That the court erred in instructing the jury as to the sudden peril rule."

[5] See, Trudeau v. Sina Contracting Co. Inc. 241 Minn. 79, 62 N. W. (2d) 492.

[6] Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; Schendel v. Klein, 215 Minn. 73, 9 N. W. (2d) 342; Trudeau v. Sina Contracting Co. Inc. 241 Minn. 79, 62 N. W. (2d) 492.

■ Next, plaintiff contends that the rule is inapplicable because, he argues, the evidence shows conclusively that, after Poncelet discovered that his brakes would not hold, he took no positive action to avert the collision. Plaintiff argues that Poncelet neither attempted to turn, to use the handbrake, to put the car into lower gear, or to do anything but that he simply continued to drive down the middle of the road. In essence his argument is that, before the rule can apply, a person confronted by an emergency must make a choice of available courses of action.

The evidence does show that Poncelet did sound his horn in an effort to warn plaintiff. Whether Poncelet did what a reasonable man would do under the circumstances is, after all, the ultimate question for the jury's determination. The emergency rule exists for and is applied in situations where the actor either has no time to act deliberately or has such limited time that he cannot be expected to act with the same dispatch as usually would be required of him. The rule, and its application, is stated in Prosser, Torts (2 ed.) § 32, as follows:[7]

"The courts have recognized that an actor who is confronted with a sudden emergency may be left no time for thought, or may reasonably be disturbed or excited, and so cannot weigh alternative courses of action, but must make a speedy decision, which will be based very largely upon impulse or instinct. He cannot be held to the same conduct as one who has had an opportunity to reflect, even though it later appears that he made the wrong decision. His choice 'may be mistaken and yet prudent.' This does not mean, however, that any different standard is to be applied in an emergency; the conduct required is still that which is reasonable under the circumstances, as they would appear to one who was using proper care. His own judgment or impulse is still not the sole criterion, and he may still be negligent if his acts are unreasonable.

"The 'emergency' doctrine is applied only where the situation which arises is sudden and unexpected, and such as to deprive the actor of all opportunity for deliberation."

Here, the time within which to act was very limited if the jury found

---

[7]See, also, Restatement, Torts, § 296.

that Poncelet had no knowledge of the defective condition of the brakes until he was about 165 feet from the intersection. Whether Poncelet met the standard of care required for a reasonable man under the circumstances existing after so discovering that his brakes would not respond was a proper question for the jury's determination.

■ Plaintiff argues that if the rule is applicable at all it should have been confined to defendant Poncelet. It is questionable whether this issue is before us since it was not raised either by exception to the court's charge or on the motion for a new trial. However, we do not believe that the jury could possibly have been misled in that respect by the court's instruction. The case was submitted on a special verdict. The jury was asked to determine whether defendants Peterson and Lair were guilty of negligence in *maintenance* of the brakes on the truck and, in a separate question, whether Poncelet was guilty of negligence in *operation* of the truck. The jury could hardly apply the emergency rule to the negligence of Peterson and Lair in the maintenance of the truck. In so far as their vicarious liability as master was concerned, they were entitled to the benefit of the rule for, if Poncelet was not guilty of negligence under the standard of care required of him, Peterson and Lair could not be held liable as master or by virtue of operation of the truck.

Finally on this issue, plaintiff contends that the instruction relating to the emergency rule was given at a point in the charge where it would be apt to lead the jury astray and to absolve Poncelet of liability. We have carefully read the instruction as a whole and see no merit in this contention. The emergency rule was given generally as part of the applicable law for determining whether either driver was negligent. It could hardly have been understood as plaintiff now argues. Apparently plaintiff did not think so at the time of the trial, and a careful reading of the instructions can hardly lead to that conclusion now.

■ Plaintiff then contends that he should have a new trial because of newly discovered evidence. The alleged newly discovered evidence appears in an affidavit of one Gilbert W. Terwilliger submitted in connection with the motion for a new trial. In it he says that on November 12, 1955, Poncelet voluntarily stated to him "in substance that he had known prior to the accident in question that the brakes on

the truck were not working properly as he had had to pump them to make them work but that at the time of said accident he pumped the brakes and they did not work."

The trial court was of the opinion that this testimony would fall in the category of evidence that is merely cumulative, contradictory, or impeaching of evidence adduced at the trial and that it was not of such a nature as to warrant a new trial. We think that the trial court was right and that, in any event, it was within the discretion of the trial court to deny a new trial on that basis.[8]

The other claim of newly discovered evidence is based upon an affidavit of plaintiff's attorney in which it is alleged that on February 25, 1957, a pretrial deposition was taken; that defendant Peterson then disclosed that a man by the name of Lee from the university had made an examination of the brakes after the accident; that Lee was not called by defendants at the trial; that plaintiff did not discover the full name and address of said Lee until March 21, 1957; and that he then discovered that his full name was Adolph O. Lee and that he was an associate professor of mechanical engineering at the University of Minnesota and an expert in hydraulics.

The only reference to what evidence Mr. Lee would give, if he were called, is the following contained in this affidavit:

"That, although he [affiant] can not inform the Court specifically as to the testimony that said Lee will give, he believes that such testimony was of vital importance to the proper determination of the issues in said case, and that the defendants should have brought said witness before the jury so that results of his examination might have been available to them."

No satisfactory reason is given why the name of Mr. Lee could not have been ascertained prior to the trial and why he could not have been called by plaintiff, but, beyond that, the affidavit falls short of making the showing required in order to justify a new trial on the ground of newly discovered evidence. The applicable rule, which was relied upon by the trial court, is stated in 14 Dunnell, Dig. (3 ed.) § 7127, as

---

[8]Briggs v. Chicago G. W. Ry. Co. 248 Minn. 418, 80 N. W. (2d) 625; Skog v. Pomush, 219 Minn. 322, 17 N. W. (2d) 641.

follows:

"* * * Before a new trial will be granted on the ground of newly discovered evidence, it must be made to appear positively, and not merely as a matter of conjecture and speculation, that evidence may be produced which is material upon an issue determined on the former trial adversely to the moving party."

We agree with the trial court that the affidavit, at best, leaves the nature of Lee's testimony, if he were called, "entirely in the sphere of hopeful speculation and conjecture."

■ The matter of granting a new trial upon the ground of newly discovered evidence rests largely in the discretion of the trial court.

"The inquiry of the appellate court is not whether upon the record a new trial apparently might have been properly granted, but whether the refusal of it involved the violation of a clear legal right or a manifest abuse of judicial discretion." Vietor v. Costello, 203 Minn. 41, 46, 279 N. W. 743, 745.

There was no abuse of discretion in denying a new trial on the ground of newly discovered evidence based on the showing made by plaintiff.

Finally, plaintiff contends that, if for no other reason, he should have a new trial in the interests of justice since the result in this case is so shocking that it should not be permitted to stand.

The case was well and ably tried by competent counsel. There is not the slightest indication in the record of any appeal to passion and prejudice. The care with which the trial court has considered the claims of plaintiff is reflected in an able and comprehensive memorandum made a part of its order denying a new trial. While the result naturally is disappointing to plaintiff, as results always are to defeated litigants, the fact questions decided by the jury were well within its province, and the evidence is such that the findings of the jury on the fact questions are supported by the evidence. We can find no justifiable reason for disturbing the disposition made of the case by the jury and the trial court.

Affirmed.