## RONALD J. EMERSON v. MELVIN J. EYSTAD.

181 N. W. (2d) 337.

November 13, 1970—No. 42056.

*Rerat, Crill, Foley & Boursier, David K. Wendel, Nord, Webster & Brennan,* and *David W. Nord,* for appellant.

*Jardine, Logan & O'Brien, Donald M. Jardine,* and *Alan R. Vanasek,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Plaintiff appeals from a judgment in favor of defendant and from an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial on damages only, or, in the alternative, for a new trial on all issues.

It appears from the record that on December 8, 1966, at about 7:25 p. m. a Great Northern passenger train was approaching the village of Clontarf, Minnesota, from the northwest, at a speed of from 77 to 79 miles per hour. At about the same time a cattle truck owned and driven by defendant, Melvin J. Eystad, was proceeding west on Grace Street (County Road No. 22) in Clontarf approaching the railroad crossing, which at the time was protected by flashing signals and gates.

There was testimony to the effect that prior to turning on Grace Street defendant had been traveling on County Road No. 9, on which the driving was described as "pretty good." Before making the left turn onto Grace Street, defendant had occasion to stop close behind a truck driven by Charles Mesenbrink. Defendant then experienced no difficulty in stopping. As defendant proceeded west on Grace Street, he had no occasion to apply his

brakes. He testified that he was traveling about 15 miles per hour and, as he passed an oil station to his right and the Clontarf Club to his left, he looked both left and right but saw no train approaching.

As defendant came up to the crossing, he looked to his left and then, as he was looking to the right, the lights on the Griswold signal began to flash. At this time he was 10 or 15 feet from the Griswold signal. He applied his brakes to stop for the light but the truck failed to stop. It was only then that defendant became aware of the unusually icy condition of the crossing. The truck started to slide and skid off to the left, either because the load shifted or because defendant turned the wheels. (He did not know which was the reason.) He kept his brakes on but could not remember whether the truck struck the Griswold signal on the other side of the tracks or whether it stopped short of it. In any event the truck stopped with its rear portion on the main line of the Great Northern track. Defendant jumped out of the truck before the collision occurred.

Ronald J. Emerson, the train's fireman, suffered personal injuries in the collision, for which he brought this lawsuit, alleging that his injuries were caused by defendant's negligence.

The record indicates that Mesenbrink was traveling at approximately the same speed as defendant and was about 10 feet from the Griswold signal when he first noticed the train. Mesenbrink testified that he applied his brakes but that just seemed to speed up his truck, so he shifted into second gear and, with his wheels spinning, managed to get over the tracks.

Mesenbrink further testified that he later went back to the crossing to determine why he did not see the train right away when he looked. At this time he observed a "big anhydrous tank," a "tree farther up the line," and "some willow brush."

The condition of the crossing was described by a local constable as "very slippery," by the Swift County sheriff as "very icy," by Mesenbrink as "compacted snow," "just like glass," and "very, very slippery," and by defendant as "glare ice."

■ The legal issue raised on this appeal is whether, in a case where the evidence was such that a jury might find either way on the question of whether a party had created an emergency, the trial court was correct in instructing the jury on the emergency rule and directing that it was to be applied only if the jury found that the emergency was not created by the one who sought to invoke the rule.

The trial court, after instructing the jury on the question of negligence, proceeded to instruct on the emergency rule, with directions that it was to be applied only if the jury found that the emergency was not created by the one who sought to invoke the rule. The court's instruction on the emergency rule was as follows:

"Now, in determining whether or not Mr. Eystad used reasonable care you should take into account the rule that one suddenly confronted by a peril through no fault of his own who in an attempt to escape does not use the best way to extricate himself from the peril, does not use the safest way, he should not be held negligent unless the choice he made was so hazardous that the ordinarily reasonable person would not have made it under like circumstances. Now you will notice that this rule states that one who suddenly is placed in a position of peril through no fault of his own. Of course if a person is in a position of peril through his own fault, then that rule does not apply at all."

The instructions given by the trial court show clearly that the jury was properly made aware of the fact that the emergency rule was to be applied only if the jury found that the emergency was not created through any fault of defendant. It appears from the instructions that the trial court repeated the foregoing precaution relative to the application of the emergency rule three times. Thus, any argument that the jury in this case was not fully aware of the fact that the emergency rule was not to be applied unless they first found the emergency arose through no fault on the part of defendant is not persuasive.

Plaintiff in fact concedes that defendant was confronted with an emergency. However, plaintiff contends that the emergency arose through defendant's own negligence, and plaintiff insists that the court should have determined this as a matter of law. It is, however, obvious from the record that a jury question was presented as to whether or not defendant's actions constituted negligence.

Plaintiff argues that defendant should have been aware of the icy condition of the crossing because some of the roads on which he had been traveling were slippery. The fact is, according to the record, the condition of the road on which defendant was traveling prior to turning on Grace Street was described as "pretty good," and he had stopped his truck with no difficulty just prior to turning onto Grace Street. On that street he had no occasion to apply his brakes until the lights of the Griswold signal began to flash, and it was then that the unusually icy condition of the crossing became apparent to him. It appears that he suddenly and unexpectedly found himself in a situation where he was unable to stop his truck due to the icy condition. These are all facts which the jury was required to take into consideration in determining whether defendant was negligent.

Plaintiff further argues the question of "lookout" and states that defendant drove along ignoring everything, including the flashing lights. An examination of the record, however, indicates that defendant testified that he looked both to his left and to his right as he passed the Clontarf Club, which was approximately 155 feet from the Griswold signal and at that time he did not see any train. There were also at that point obstructions to defendant's view—the large anhydrous tank, the tree, and the willow brush described in Mesenbrink's testimony. When the signal began to flash, defendant had to choose whether to apply his brakes or attempt to go straight across. His choice was to apply his brakes, which would ordinarily be the prudent thing to do when the signals are flashing. But, because of the unusually icy con-

dition, he was unable to stop. The record indicates that defendant acted as soon as the Griswold signal began to flash.

The foregoing considerations indicate that there was more than sufficient evidence upon which to base a finding that defendant was not negligent with regard to the creation of the emergency. Furthermore, reasonable minds could differ as to the conclusions to be drawn from the evidence presented. This court said in Minder v. Peterson, 254 Minn. 82, 88, 93 N. W. (2d) 699, 705:

"* * * Where the evidence is such that the jury may find either way on the question of whether a litigant has created an emergency, it is proper to instruct the jury on the emergency rule with directions that it is to be applied only if the jury finds that the emergency was not created by the one who seeks to invoke the rule."

See, also, Roeck v. Halvorson, 254 Minn. 394, 95 N. W. (2d) 172; Trudeau v. Sina Contracting Co. Inc. 241 Minn. 79, 62 N. W. (2d) 492; Gran v. Dasovic, 275 Minn. 415, 147 N. W. (2d) 576; Daly v. Springer, 244 Minn. 108, 69 N. W. (2d) 98; Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; Johnson v. Townsend, 195 Minn. 107, 261 N. W. 859.

The cases cited make it clear that the emergency doctrine has equally valid application in the case at bar, where the emergency arose due to the unusually icy condition of the crossing, as it does in the case where the emergency is created by the negligent conduct of another.

Plaintiff has cited several cases in which it was held that the emergency rule was not applicable, such as Bakken v. Lewis, 223 Minn. 329, 26 N. W. (2d) 478; Ind v. Bailey, 198 Minn. 217, 269 N. W. 638; Olson v. Duluth, M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492; and Corridan v. Agranoff, 210 Minn. 237, 297 N. W. 759. We said in Trudeau v. Sina Contracting Co. Inc. 241 Minn. 79, 84, 62 N. W. (2d) 492, 496:

"The so-called emergency rule is but a special application of

the general standard of reasonable care. When given, it requires a jury to consider the fact of sudden peril as a circumstance in determining the reasonableness of a person's response thereto. The rule can only apply if it has first been determined that there existed a real peril and that the negligence of the party seeking to invoke it was not a contributing cause. Prosser, Torts, § 37; Restatement, Torts, § 296."

In Oldendorf v. Eide, 260 Minn. 458, 464, 110 N. W. (2d) 310, 314, this court said:

"* * * It must be conceded that there was evidence upon which a jury might find that defendant's truck was out of control and skidded into plaintiffs' car because of uncontrollable factors rather than because of defendant's negligence."

An examination of the evidence, viewed in the light most favorable to defendant, convinces us that the court was correct in submitting the question of defendant's negligence to the jury. It is clear from the evidence that the jury might well reach the conclusion that after the truck suddenly came upon the icy portion of the approach to the crossing defendant did everything possible to avoid the collision but through no fault of his own was unable to do so. This court has frequently held that while it is incumbent upon a driver to exercise care commensurate with the situation when the icy condition of a highway causes a vehicle to skid or slide, it remains for the jury to determine whether he has done so or whether his conduct was negligent. Under the well-established rule applied in Oldendorf v. Eide, *supra*; Barnhardt v. Hendrickson, 178 Minn. 400, 227 N. W. 356; Wiester v. Kaufer, 188 Minn. 341, 247 N. W. 237; Trudeau v. Sina Contracting Co. Inc. *supra*; and Minder v. Peterson, *supra*, the trial court correctly submitted to the jury the issue of the negligence of defendant driver. We are also of the opinion that the court in the instant case correctly instructed the jury with reference to the emergency doctrine.

■ Plaintiff moved for judgment notwithstanding the verdict

or for a new trial. Judgment was entered pursuant to the jury's verdict in favor of defendant. Under the circumstances, the only remaining question on this appeal is whether, under the court's instructions, there is sufficient evidence to justify the jury's determination that defendant was free from negligence.[1] The trial court carefully made certain that the jury was well aware of when the emergency doctrine may be applied, and it cannot be assumed that the jury failed to heed the court's instructions. There was ample evidence to sustain the verdict in defendant's favor.

Affirmed.

---

[1] See, Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354.