**Jeffrey J. PELLER, Appellant,**

v.

**Dr. Suzanne B. HARRIS, et al., Respondents,**

**Luigi Taddeini, et al., Defendants.**

**No. C5-90-1016.**

Court of Appeals of Minnesota.

Jan. 8, 1991.

Martha L. Neese, Lyons Sawicki & Assoc., P.A., St. Paul, for appellant.

Marlene S. Garvis, Alan R. Vanasek, Jardine, Logan & O'Brien, St. Paul, for respondents.

Considered and decided by KALITOWSKI, P.J., and FOLEY and NORTON, JJ.

## OPINION

FOLEY, Judge.

In this medical malpractice action, appellant Jeffrey J. Peller sued Dr. Luigi Taddeini, Dr. Robert Olson, Ramsey Clinic Associates and respondents Dr. Suzanne B. Harris and St. Paul Ramsey Medical Center for injuries arising out of administration of a chemotherapy drug. The parties stipulated that St. Paul Ramsey was vicariously liable for any negligence of Dr. Harris.

Prior to trial, Peller entered into a *Pierringer* settlement with Dr. Taddeini, Dr. Olson and Ramsey Clinic. Peller's claims against Dr. Harris and St. Paul Ramsey were tried to a jury. The negligence of Drs. Taddeini and Olson was also submitted to the jury.

The jury rendered a special interrogatory verdict finding that Drs. Harris, Taddeini and Olson were negligent in their medical treatment of Peller and that their negligence was a direct cause of his injuries. The jury apportioned 10% fault to Dr. Harris, 30% fault to Dr. Taddeini and 60% fault to Dr. Olson.

The jury also found Peller's damages for pain, disfigurement, disability, emotional distress and embarassment to be $2,000, past, and $500, future. The jury found his future medical and surgical costs to be $26,500. On November 13, 1989, the trial court filed an order for judgment in Peller's favor for $26,500 against Dr. Harris and St. Paul Ramsey.

On January 19, 1990, the trial court filed an order (1) denying Peller's motions for judgment notwithstanding the verdict or a new trial; (2) granting Peller's motion for recovery of costs and disbursements under Minn.Stat. § 549.04; (3) denying Dr. Harris and St. Paul Ramsey's motion for Rule 68 costs and (4) amending the November 8, 1989 order for judgment to award Peller 10% of $26,500 as a reflection of the comparative fault found by the jury. On March 26, 1990, the trial court filed an order delineating costs and disbursements to be awarded to Peller. Judgment was entered on April 24, 1990 pursuant to the January 19, 1990 and March 26, 1990 orders.

Peller appeals. Dr. Harris and St. Paul Ramsey have filed a notice of review. We affirm in part, reverse in part and remand.

## FACTS

Peller was referred to Dr. Taddeini, a staff oncologist at St. Paul Ramsey, for treatment of large cell lymphoma. On August 15, 1986, Dr. Taddeini admitted Peller to St. Paul Ramsey for cancer chemotherapy. The medical team caring for Peller was headed by staff physician Dr. Olson. Dr. Harris, a first year resident, worked on the medical team under the supervision of Dr. Olson.

On August 16, 1989, Dr. Harris administered Adriamycin to Peller intravenously in his right arm. Peller claims the drug extravasated, or leaked, into the tissue under his skin and caused the death of portions of that tissue. He alleges he sustained injury to his arm because Dr. Harris did not follow proper procedures when the extravasation occurred.

Dr. Harris reported the possible leakage to Dr. Olson the next day. No further treatment for the extravasation was given,

and Peller was discharged. Dr. Taddeini continued outpatient treatment of Peller for his cancer and the extravasation.

Peller underwent physical therapy for over six months. He last saw the physical therapist on March 13, 1987. He did not return for recommended follow-up visits, and was never discharged from physical therapy. In the fall of 1987, Dr. David Larson recommended surgery. Peller said he would have the surgery in March 1988 but never returned to Dr. Larson.

The evidence adduced at trial shows that, prior to the August 1986 extravasation, Peller had decided to get his college degree in music education. He planned to teach elementary or high school. Peller had changed his major to music education from music performance because he knew the performance of music was a very competitive area, and he had earned no income as a pianist prior to August 1986. He also testified the extravasation problem had no effect on the time it took him to get his degree because he would have been out of school for cancer treatment.

## ISSUES

1. Did the trial court err in denying Peller's motion for a new trial on the ground of newly discovered evidence that Dr. Harris and St. Paul Ramsey's expert had perjured himself as to how many times he took his medical certification examination?

2. Did the trial court err in submitting the negligence of Drs. Olson and Taddeini to the jury because there was no physician expert testimony their negligence was a direct cause of Peller's injuries?

3. Did the trial court err in denying Peller's motions for a new trial for insufficient damages?

4. Did the trial court err in its award of costs and disbursements to Peller under Minn.Stat. § 549.04 (1988)?

5. Did the trial court err in finding respondents had not made a proper Minn.R. Civ. P. 68 offer of judgment?

## ANALYSIS

1. Peller argues the trial court erred in denying his motion for a new trial on the ground of newly-discovered evidence that Dr. Harris and St. Paul Ramsey's expert had perjured himself as to how many times he took his medical certification examination.

[A] trial court's decision on a motion for a new trial based on newly discovered evidence is a matter for the trial court's discretion.

*Disch v. Helary, Inc.*, 382 N.W.2d 916, 918 (Minn.App.1986) (citing *Hertz v. Hertz*, 304 Minn. 144, 146, 229 N.W.2d 42, 44 (1975); *Lampsen v. Brander*, 28 Minn. 526, 530, 11 N.W. 94, 96 (1881)). On review, this court does not decide if a new trial

might properly have been allowed but whether the trial court's refusal to do so involved the violation of a clear legal right or a manifest abuse of discretion.

*Disch*, 382 N.W.2d at 918 (citing *Minder v. Peterson*, 254 Minn. 82, 92, 93 N.W.2d 699, 707 (1958)).

Minn.R.Civ. P. 59.01(d) provides as a ground for a new trial: "Material evidence newly discovered, which with reasonable diligence could not have been found and produced at the trial." Peller does not dispute he already knew about the evidence at the time of trial. He says he had heard "rumors." Even if the evidence was not discoverable prior to trial, however, the discovery of it was not grounds for a new trial.

The general rule is that a new trial will not be granted unless the newly discovered evidence is so important "it will probably produce a different result at another trial."

*Disch*, 382 N.W.2d at 919 (quoting *State v. Jacobson*, 326 N.W.2d 663, 666 (Minn. 1982)).

Peller argues Dr. Harris and St. Paul Ramsey's expert was the only expert to testify Dr. Harris was not negligent. The expert also testified the other two doctors were not negligent, however, and the jury found them to be 30% and 60% at fault. Additionally, Dr. Harris and St. Paul Ramsey's expert was certified. While we do

not condone perjury, in this case the lie went more to impeachment than qualification. We affirm the trial court's denial of a new trial on the ground of newly-discovered evidence.

2. We also find the trial court did not err in submitting the negligence of Drs. Olson and Taddeini to the jury. Peller argues there was no evidence their negligence was a direct cause of his injuries. He contends the damage had been done by the time Drs. Olson and Taddeini saw him.

Peller's own expert testified, however, that there was a 72–hour "window of opportunity" within which Drs. Olson and Taddeini saw Peller and could have minimized the damage. Furthermore, both Drs. Olson and Taddeini supervised Dr. Harris. There was sufficient evidence of their negligence.

3. Peller alleges the trial court erred in denying his motions for a new trial for insufficient damages or for an additur. We disagree. This is a matter within the discretion of the trial court. *Kalpin v. Helgeson*, 254 N.W.2d 378, 379 (Minn.1977). Unless "manifestly and palpably contrary to the evidence," the jury award should not be disturbed. *Levienn v. Metropolitan Transit Comm'n*, 297 N.W.2d 272, 273 (Minn.1980).

Peller contends damages should be considered inadequate when the jury awards only special damages and general damages have been proven. However, any inconsistency in the jury's award to Peller of only $500 for future pain and $26,500 for future medical expenses can be explained by evidence that future surgery could significantly remedy Peller's problem with his arm. As to Peller's loss of a future career as a pianist, a review of the record shows he simply did not meet his burden of proof.

4. Peller argues the trial court erred in its award of costs and disbursements under Minn.Stat. § 549.04. Peller sought more than $16,000 in costs. The trial court found only $6,045 of the claimed costs were reasonable. The trial court then reduced that amount to $604.59 be-

cause the jury found Dr. Harris only 10% at fault.

Ordinarily, it is within the discretion of the trial court to determine if costs are reasonable. *Romain v. Pebble Creek Partners*, 310 N.W.2d 118, 123–24 (Minn. 1981). However, the blanket reduction on a percentage basis by the trial court here is outside the reasonableness standard.

We find no Minnesota Supreme Court holding that, in a *Pierringer* setting, a non-settling defendant's liability for costs is limited to the percentage of comparative fault of that defendant found by the jury. We decline to make that holding now because we believe the reasonableness standard demands an item-by-item consideration.

Furthermore, we think it should not be overlooked that this case involves a blameless plaintiff. We believe all reasonable costs should be recoverable by him notwithstanding the general rule in cases with *Pierringer* settlements that damages be fixed at the percentage of fault found by the jury. For these reasons, we remand to the trial court for a reconsideration of its award of costs and disbursements to Peller.

5. Dr. Harris and St. Paul Ramsey argue the trial court erred in finding they had not made a proper rule 68 offer of judgment. *See* Minn.R.Civ. P. 68. In the interest of promoting certainty of settlements, it is required that a settlement offer tender costs in order to qualify as a valid rule 68 offer of judgment. *Kusniryk v. Arrowhead Regional Corrections Bd.*, 413 N.W.2d 182, 184 (Minn.App.1987). The offer of Dr. Harris and St. Paul Ramsey did not tender costs and therefore was not a valid rule 68 offer.

### DECISION

Affirmed in part, reversed in part and remanded.