W.G.O., as GUARDIAN FOR
A.W.O., Respondent,

v.

Mary Louise CRANDALL,
Petitioner, Appellant.

No. C2–00–1266.

Supreme Court of Minnesota.

March 7, 2002.

Lommen, Nelson, Cole & Stageberg, P.A. Kay Nord Hunt, Minneapolis, MN, Dunlap & Seeger, P.A., Ken D. Schueler, Rochester, MN, for Appellant.

Cooper Law Firm, Stephen W. Cooper, Kathryn J. Cima, Minneapolis, MN, for Respondent.

## OPINION

STRINGER, Justice.

A.W.O. (respondent)[1] was injured when the bicycle he was riding was struck by an automobile driven by Mary Crandall (appellant) in August of 1993, when respondent was twelve years old. W.G.O., respondent's father, filed suit against appellant in October of 1998, alleging that appellant's negligence caused physical and emotional injury and financial damage to respondent. Appellant denied these allegations and asserted the affirmative defenses of contributory negligence and assumption of the risk. A jury concluded that appellant was 80% at fault and respondent was 20% at fault and awarded $391,683.16 in damages.

Appellant moved for a new trial or, in the alternative, judgment notwithstanding the verdict (JNOV) arguing that the jury should have been instructed on the "emergency rule" which at the time of the trial was expressed in CIVJIG 110, providing:

A person confronted with an emergency through no negligence of [his][her] own who, in an attempt to avoid the danger, does not choose the best or safest way, is not negligent because of such choice unless the choice was so hazardous that a reasonable person would not have made it under like circumstances.

4 Minn. Dist. Judges Ass'n, *Minnesota Practice Jury Instruction Guides, Civil,* CIVJIG 110 (3d ed.1986) (since modified and currently found at CIVJIG 26.35 (4th ed.1999)).[2] Appellant also asserted that respondent's accident reconstruction expert was allowed to express opinions as to average driving speed and appellant's braking not based on proper foundation. Appellant's motion was denied and she appealed. The court of appeals, in a split decision, concluded that the trial court did not err in refusing to instruct the jury on the emergency rule because the emergency situation was created, at least in part, by appellant's own negligence. The court also ruled that the trial court erred in admitting the testimony of respondent's expert, but concluded the error was not prejudicial. The dissent disagreed, contending that prejudicial error resulted from both the trial court's failure to instruct the jury on the emergency rule and its improper admission of testimony from respondent's expert witness.[3] We reverse and remand for a new trial as to liability only.[4]

On the afternoon of August 3, 1993, appellant left her local country club in Austin, Minnesota after playing tennis and eating lunch. She admitted sampling two to four ounces of wine along with her meal

1. A.W.O. was an adult by the time this case reached trial. While counsel discussed with the court amending the pleadings to reflect his adult status, the record does not reflect such an amendment. Nonetheless, we treat A.W.O. as the formal party to these proceedings and refer to him as respondent.

2. *See also Johnson v. Townsend,* 195 Minn. 107, 110, 261 N.W. 859, 861 (1935) (setting forth the emergency rule).

3. The court of appeals panel was in agreement, however, that the trial court erroneously denied appellant's motion for determination of collateral source offset benefits and that remand on that issue was appropriate. Appellant did not petition this court for review of this issue, and respondent did not file a cross-petition. Determination of the amount of collateral source offset benefits to which appellant is entitled is an issue preserved for resolution at retrial to the extent that its resolution is necessary.

4. Since the issue of damages was fully litigated at the first trial, retrial on the issue of damages is unnecessary.

approximately one hour before the accident occurred. Appellant exited I–90 and proceeded in the left lane of the two southbound lanes of Oakland Place heading in the direction of Eighth Avenue. At about the same time, respondent and a friend were riding their bicycles in an easterly direction on Eighth Avenue N.E. toward the intersection of Oakland Place where a stop sign controls the Eighth Avenue traffic. Traffic exiting westbound I–90 is channeled directly onto Oakland Place which consists of four lanes, two in each direction, separated by a grass median. Vehicles traveling south on this stretch of Oakland Place are not subject to any stop or yield sign; as the investigating police officer testified, this is a "limbo area" with regard to speed as drivers exiting I–90 onto Oakland Place are likely driving somewhere between the 55–mph highway speed [5] and the 40–mph speed limit posted just beyond the Eighth Avenue intersection.[6] Both parties testified that they were familiar with other traffic at this intersection: appellant acknowledged that she was aware that children frequented the area as there was a lake in the vicinity, and respondent, an experienced biker, knew that cars traveling south on Oakland Place were exiting at freeway speed from nearby I–90.

From the top of the overpass, about 500 feet from the intersection of Eighth Avenue, appellant noticed respondent and his friend approaching the stop sign at a moderate speed. According to appellant's testimony, the boys were about 45–75 feet from the intersection when she first saw

them. Appellant testified at trial that she was probably going about 50–mph as she exited the freeway, slowing to approximately 40–45–mph on the stretch just before the accident, and that she slowed down when she noticed respondent and his friend in the distance.

Although there is disagreement as to whether respondent stopped at the intersection, it is undisputed that he was looking to the right talking to his friend when he entered Oakland Place and did not see appellant's car approaching on his left until immediately before impact. Appellant testified that she observed the boys for more than ten seconds, and that she had no indication that respondent was not going to stop until she saw him enter the intersection. At that point appellant put on her brakes and thought she had almost stopped before hitting him—she came to a complete stop about 10–15 feet after the point of impact.

Respondent's accident reconstruction expert testified that appellant was traveling at a rate of at least 30–mph at the time of impact and that respondent was thrown approximately 60 feet as a result of the collision; appellant's reconstruction expert estimated appellant's traveling speed at about 20–mph and estimated that respondent was thrown about 25 feet upon impact with appellant's vehicle.

According to appellant's testimony and the police report, there was damage to the front left driver's side of the vehicle and to the far rear end of respondent's bicycle,

---

**5.** The investigating police officer initially testified that he believed the highway speed at the time of the accident was 65–mph, however, respondent's counsel clarified later in the trial that the speed limit on the interstate in 1993 was 55–mph.

**6.** The police officer noted that the area between the interstate exit and the accident site

is "unsigned," however, he also acknowledged that technically the speed limit for this particular stretch of road is 40–mph and that a person familiar with the area should have decelerated at least into the low 40s at the point where the accident occurred in anticipation of the 40–mph zone marked just ahead.

suggesting that appellant's car just clipped the back of respondent's bicycle as he was crossing the street. The police officer testified that there was no physical evidence with regard to skid marks or point of impact, and no indication of evasive or defensive maneuvers by either party. Based on his knowledge of average reaction time and stopping distance, the officer concluded that appellant was not traveling at an excessive speed at the time of the accident. Although appellant acknowledged that the accident would not have occurred if she had been just 1 ½ feet farther to the right, she claimed she had no time to swerve or even honk her horn. Consistent with that testimony, respondent's friend, biking with him that day, testified that he did not hear any car honk and that he did not hear the sound of brakes until after respondent was hit.

Respondent sustained serious injuries to his lower left leg as a result of the accident: he had an open fracture, massive soft tissue injury, and required skin grafting on a 26 × 15 cm wound using a donor site on his thigh. Complications from these initial injuries, including skin infections and two subsequent leg fractures, prolonged his recovery for over a year.

On October 16, 1998, respondent's father filed this lawsuit on respondent's behalf alleging that appellant's negligence in driving too fast and failing to yield caused severe physical injury, emotional harm, and significant financial expense to respondent. Appellant denied these allegations and, in her defense, asserted that respondent was negligent in failing to look out for his own safety and that he assumed the risk of his injuries.

The case was tried before a jury in August 1999. At the trial, respondent's expert on accident reconstruction was allowed to testify, over appellant's objection, that a "normal driver" would proceed through the area in which this accident occurred at 32 mph based on his determination that this was the average speed motorists passed through this intersection when he studied it five years after the accident. Using this "average speed" as a guide, respondent's expert concluded that appellant's higher rate of speed was a contributing factor to the accident and that if appellant had been driving at the speed people "normally travel" at this intersection, respondent would not have been injured.

Also over appellant's objection, respondent's expert was permitted to assert that if appellant applied her brakes as she testified, her vehicle, although equipped with an anti-lock brake system (ABS), should have left skid marks. The expert's testimony was based on experiments he conducted with his wife's vehicle—of a different year, make and model than appellant's vehicle but similarly equipped with ABS brakes. His experiments consisted of repeatedly driving his wife's car at 30–mph, locking up the brakes, and jumping out to view the surface of the road where he observed that the skid marks were "visible to the naked eye" as apparently evidenced by photographs he took at the time. Although he admitted that ABS skid marks could be faint and dissipate quickly, he maintained that a trained person such as a police officer should be able to identify them. Since the police officer reported that he found no skid marks at the scene of the accident, the implication was that appellant did not apply her brakes as she claimed.

Appellant's expert on accident reconstruction also testified as to skid marks stating that although cars with ABS brakes do leave marks, they are not technically skid marks; rather, ABS brakes leave a mark from an effect of cleaning the surface of the pavement, but in his opinion,

even this type of mark would not be expected on this particular type of road. Appellant's expert also testified that, based on appellant's maximum 45–mph rate and an average perception-reaction time of 1.5 seconds, it would have been impossible for appellant to bring her vehicle to a full stop, or even swerve, to avoid the accident.

As the trial came to a close, appellant requested that the jury be instructed on the emergency rule in CIVJIG 110, which provides for a particularized standard of care where a person is confronted with an emergency situation not of his or her own creation. Appellant argued that this instruction was appropriate because appellant had a right to assume respondent would stop at the stop sign and look to the left before proceeding. When respondent did not do so however, an emergency situation was created through no fault of appellant. Respondent objected to the instruction arguing that this was not the type of situation in which the emergency rule would apply and that even if there was an emergency, appellant's failure to use due care at least contributed to creating it. The trial court agreed, concluding this was not an emergency rule case and noting that, unlike a situation where a child darts out from behind a car, appellant had advance notice of the potential danger here. The jury ultimately concluded that appellant was 80% at fault and respondent was 20% at fault and awarded respondent $391,683.16.

Post trial, appellant moved for a new trial or, in the alternative, JNOV arguing, among other things, that the trial court erred in allowing respondent's expert witness to testify regarding average speed at the intersection and skid marks left by a different vehicle with ABS brakes, and in refusing to instruct the jury on the emergency rule. The trial court denied appellant's motion concluding that an emergency rule instruction was inapplicable, that the information presented by respondent's expert regarding speed was helpful and relevant to the issue whether appellant was driving too fast under the circumstances, and that the photograph evidencing that ABS brakes can leave skid marks, even if made by an unrelated vehicle, was properly admitted.

On appeal, the court of appeals affirmed the trial court's ruling that the emergency instruction was not appropriate because appellant was aware of the potential danger as she approached the intersection and that she was not confronted with a sudden peril to which her own negligence did not contribute. The court concluded however, that the trial court's ruling admitting the testimony of respondent's accident reconstruction expert relating to the speed of vehicles at the accident scene was speculative, not helpful to the jury, and not based upon a reasonably complete and accurate reconstruction. It also concluded that admission of the expert's testimony regarding ABS brakes and the accompanying photograph was error, as the record did not indicate that his experiments were conducted under conditions and circumstances substantially similar to those existing when the accident occurred. Nonetheless, the court of appeals held that the trial court's erroneous evidentiary rulings did not constitute prejudicial error as the jury could have reached its verdict based on other testimony. The dissent disagreed, asserting prejudicial error as to the trial court ruling denying the emergency jury instruction and admitting the disputed testimony of respondent's expert. The dissent argued that there should have been an instruction on the emergency rule, and that it should be refused only in those cases where it can be said as a matter of law that defendant's pre-emergency conduct was negligent; otherwise, it should be left

to the jury to decide whether to apply the doctrine based upon its resolution of the disputed facts.[7] As to the evidentiary rulings, the dissent concluded they were not only erroneous but also prejudicial, especially because respondent relied heavily upon this testimony to support his argument that appellant was negligent in driving too fast and failing to apply her brakes to avoid the collision.

■ We first consider whether the trial court's erroneous admission of the testimony presented by respondent's accident reconstruction expert entitles appellant to a new trial.[8] An improper evidentiary ruling resulting in the erroneous admission of evidence will only compel a new trial if it results in prejudicial error to the complaining party. *Kroning v. State Farm Auto. Ins. Co.,* 567 N.W.2d 42, 46 (Minn.1997). An evidentiary error is prejudicial if it might reasonably have influenced the jury and changed the result of the trial. *See Jenson v. Touche Ross & Co.,* 335 N.W.2d 720, 725–26 (Minn.1983) (applying standard to exclusion of evidence); *Cloverdale Foods of Minnesota, Inc. v. Pioneer Snacks,* 580 N.W.2d 46, 51–52 (Minn.App.1998) (applying standard to admission of evidence). On the other hand, erroneous admission of evidence which is cumulative and corroborated by other competent evidence will be deemed harmless and will not warrant a new trial. *See In re Estate of Lea,* 301 Minn. 253, 259, 222 N.W.2d 92, 97 (1974); Minn. R. Civ. P. 61.

■ Appellant argues that the testimony of respondent's accident reconstruction expert relating to calculations of the average speed at which "normal" motorists drive through the intersection where the accident occurred, and his conclusion· that vehicles equipped with ABS brake systems will leave skid marks when applied based on experiments with a vehicle of a different year, make and model than the one involved in this accident, was critical to respondent's·claims. Appellant claims this evidence was the *only* evidence supporting respondent's assertion that appellant was negligent by driving at an unreasonable and excessive speed, and that she did not apply her brakes to avoid the collision. Appellant takes particular issue with repeated characterization of the speed of other drivers passing through the accident site as the rate at which a "normal driver" would proceed, especially in respondent's closing arguments, and argues that the characterization created an arbitrary standard of care that prejudicially affected the jury's assessment of negligence entitling appellant to a new trial.[9]

7. The statement of the dissent as to the emergency rule is a correct statement of the law. *See, e.g., Minder v. Peterson,* in which this court held:

> Where the evidence is such that the jury may find either way on the question of whether a litigant has created an emergency, it is proper to instruct the jury on the emergency rule with directions that it is to be applied only if the jury finds that the emergency was not created by the one who seeks to invoke the rule.

254 Minn. 82, 88, 93 N.W.2d 699, 705 (1958) (citations omitted); *see also Emerson v. Eystad,* 288 Minn. 401, 406, 181 N.W.2d 337, 339 (1970); *Roeck v. Halvorson,* 254 Minn. 394, 398, 95 N.W.2d 172, 175–76 (1959). For reasons stated hereafter however, we do not rule on whether the trial court erred in refusing to instruct on the emergency rule.

8. Respondent did not cross appeal the court of appeals' holding that the admission of testimony of respondent's expert as to average speed and skid marks was error, and we granted appellant's petition for review only as to the court of appeals' determination that the trial court's error was *not prejudicial;* therefore, we do not address whether admission of such testimony was proper.

9. Appellant also asserts that the court of appeals mistakenly reasoned that the erroneous evidentiary rulings were not prejudicial, argu-

Respondent argues that although the admission of his expert's testimony regarding vehicle speed and ABS brakes may have been error, it did not prejudice appellant's defense—juries are quite capable of evaluating the probative value of evidence and rejecting it where appropriate, so respondent asserts, and the verdict should not be overturned as there was "overwhelming" evidence to support it.

After a careful review of the record, we conclude that the erroneous admission of the expert testimony as to vehicle speed and braking might reasonably have influenced the jury and changed the result of the trial. *See Jenson*, 335 N.W.2d at 725. Although there is some potentially corroborating evidence with regard to the timing and application of appellant's brakes,[10] the improperly admitted testimony of respondent's expert was the only source of substantial evidence rebutting appellant's contention that she did apply her brakes, and that there were no skid marks because the car she was driving was equipped with ABS brakes—crucial evidence that in the absence of the erroneously admitted expert testimony would have explained the lack of skid marks.

As to the testimony relating to speed, there was nothing in the statements by appellant or the investigating police officer to suggest that appellant's speed was excessive given the circumstances. The speed limit for the accident site was 40–mph, and the investigating police officer indicated that drivers along this portion of "unsigned" road are likely in the process of decelerating from the 55–mph highway speed to the 40–mph city speed. Thus, the testimony of respondent's expert that 32–mph was the speed of a "normal driver" at that intersection might reasonably have influenced the jury's assessment as to the reasonableness of appellant's speed and changed the result of the trial.

Accordingly, we hold that the testimony from respondent's accident reconstruction expert regarding speeds of other motor vehicles at the accident site and whether vehicles with ABS brakes leave skid marks on the pavement, admitted in error by the trial court, was prejudicial to appellant's defense.

In light of our decision that erroneous evidentiary rulings resulted in the admission of prejudicial testimony relating to appellant's defense, and because the record will be substantially different on retrial, a ruling on whether the trial court erred by failing to instruct the jury on the emergency rule based on the record before the court would serve no purpose. We therefore decline to rule on this issue.

Reversed and remanded for a new trial on the issue of liability only.

---

ing that the appropriate test is not whether there is other credible evidence upon which the jury could have based its finding, but whether the ruling might reasonably have influenced the jury and affected the result of the trial. While it is not clear from the court of appeals opinion that the test for prejudicial error was misapplied, we have articulated the appropriate standard above.

**10.** Respondent's friend, biking with him at the time of the accident, testified that he did not hear the sound of brakes and tires squealing until after the point of impact. In addition, the investigating police officer stated that he saw no signs of heavy braking at the accident site.