HENRY A. BOBICH, ALSO KNOWN AS ELWOOD BOBICH,
TRUSTEE FOR HEIRS AND NEXT OF KIN OF BETTY
JANE BOBICH, v. FRANK E. OJA, ALSO KNOWN AS
ED OJA, AND ANOTHER.
AMERICAN HARDWARE MUTUAL INSURANCE
COMPANY, THIRD-PARTY DEFENDANT.

104 N. W. (2d) 19.

June 17, 1960—No. 37,995.

*Lewis, Hammer, Heaney, Weyl & Halverson,* for appellant.
*Hultstrand, Abate & Wivoda,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from a judgment entered pursuant to an order granting a motion of third-party defendant for summary judgment, and from an order denying third-party plaintiff's motion to vacate the judgment and for leave to file a supplementary complaint.

The facts are not seriously in dispute. Frank E. Oja is the president of Oja's, Inc., a Minnesota corporation engaged in operating a shopping center at Pengilly, Minnesota, including a general merchandise business, restaurant, garage, and service station. He is also the principal stockholder of the corporation, owning approximately 70 percent of the corporate stock. Frank E. Oja, personally, does not own any automobile. Oja's, Inc., owns a number of motor vehicles which are used principally in the business of the corporation. Among such motor vehicles on July 8, 1958, was a 1956 Chevrolet station wagon. The station wagon was being driven on that date by Betty Jane Bobich and Louise Bjork, employees of Oja's, Inc., in the course of their employment, and, while so driven, it was involved in a collision with a motor vehicle driven by Stuart D. Felix. Both Oja employees died as a result of injuries received in the collision.

At the time of this accident the Chevrolet station wagon was registered in the name of Oja's, Inc., and was covered by a comprehensive general and automobile liability policy of insurance issued by American Hardware Mutual Insurance Company as insurer.

Sometime subsequent to this accident separate actions were started by the trustees for the heirs and next of kin of each employee against the special administrator of the estate of the other, each trustee alleging

that the other employee had been the driver of the automobile at the time of the collision. Frank E. Oja, personally, was joined as a defendant in these actions, plaintiffs alleging that he was the owner of the Chevrolet automobile. The defense of these actions was tendered to American Hardware Mutual Insurance Company, and it refused to defend on the ground that the policy of insurance issued to Oja's, Inc., did not cover automobiles owned personally by Frank E. Oja and that there was no coverage under these policies for any liability which might result from the actions so instituted. Thereupon American Hardware Mutual Insurance Company was brought in as a third-party defendant in order to litigate whether this insurer was obligated to defend these actions.

The policy of insurance involved consists of a basic policy and a number of endorsements. The basic policy is in the usual form of such insurance and includes insuring agreements, exclusions, conditions, and schedule of declarations. The provisions thereof which are of importance here are as follows:

Under the heading "INSURING AGREEMENTS" in the basic policy appear these provisions:

"I Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

\* \* \* \* \*

"II Defense, Settlement, Supplementary Payments: *With respect to such insurance as is afforded by this policy,* the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; \* \* \*

\* \* \* \* \*

"III Definition of Insured: The unqualified word 'insured' includes the named insured and also includes (1) under coverages A and C, except with respect to the ownership, maintenance or use of automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining, any executive officer, director or

stockholder thereof while acting within the scope of his duties as such, * * * and (2) under coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. *The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement:*

* * * * *

"(e) with respect to any non-owned automobile, to any executive officer *if such automobile is owned by him* or a member of the same household." (Italics supplied.)

Under the heading "EXCLUSIONS" in the basic policy appears this provision:

"This policy does not apply:

* * * * *

"(f) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;"

Under the term "Definitions" in the basic policy we find the following:

"(b) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) Owned Automobile—an automobile owned by the named insured;

"(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;

"(3) Non-Owned Automobile—any other automobile."

In endorsement GL-130, which became effective March 1, 1958, we find, among other things, the following:

"B. DEFINITION OF INSURED.

\* \* \* \* \*

"The unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this endorsement, and (2) any person while using an automobile covered by this endorsement, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, This definition does not include:

\* \* \* \* \*

"(b) any partner, employee, director, stockholder or additional insured *with respect to any automobile owned by him,* or by a member of his household other than the named insured;" (Italics supplied.)

Endorsement GL-74 contains the provision that "All conditions and provisions of the policy not amended herein remain unchanged," and, while this endorsement names Frank E. Oja and Robert Oja individually within the definition of insured, it contains the following exclusion:

"2. Exclusions. *This endorsement does not apply:*

\* \* \* \* \*

"(e) *to any automobile owned by* or furnished for regular use to *such named individual* or a member of the same household \* \* \*." (Italics supplied.)

There are other provisions and endorsements, but they are not deemed of any importance here.

Based upon affidavits. in which it clearly appears that Frank E. Oja claims not to have been the owner of the automobile involved, the court granted summary judgment in favor of the third-party defendant on the ground, as shown by its memorandum, that the policy did not cover liability for damages arising out of the use of any automobile owned by Frank E. Oja individually.

The only question presented here is whether the court correctly held

that under these circumstances the insurer of automobiles owned by Oja's, Inc., was not obligated to defend an action based upon use of an automobile owned by Frank E. Oja personally.

After the summary judgment was granted in favor of the third-party defendant, Frank E. Oja, as third-party plaintiff, made a motion for an order vacating and setting aside the order granting summary judgment and any judgment that might have been entered pursuant thereto and granting to third-party plaintiff the right to file a supplementary complaint seeking reformation of the insurance contract on the theory that during negotiations for the issuance of this policy to Oja's, Inc., it was agreed and understood that the policy would cover Frank E. Oja "as an assured and would protect him against any possible claim arising in any way out of the operation of the business of Oja's, Inc., including the ownership, maintenance or use of any of the automobiles registered in the name of Oja's, Inc., and including the automobile involved in the accident giving rise to plaintiff's cause of action." The court denied this motion, and the appeal is taken from this order as well as from the judgment based upon the order granting summary judgment.

At the outset it should be said that applicable rules of construction have heretofore been clearly stated in former decisions, but it may serve some useful purpose to restate them here.

In the first place, an insurer, under an agreement to defend such as we have here, is not bound to defend a suit on a claim outside the coverage of the policy, even though under the terms thereof it is obligated to defend all suits brought against the insured, whether groundless, false, or fraudulent. In other words, the suit must be based on a claim covered by the policy before the obligation to defend comes into play.[1] Where there is no coverage by reason of an exclusionary clause, there is no obligation to defend.[2]

---

[1]Weis v. State Farm Mutual Auto. Ins. Co. 242 Minn. 141, 64 N. W. (2d) 366, 49 A. L. R. (2d) 688; Lyman Lbr. & Coal Co. v. Travelers Ins. Co. 206 Minn. 494, 289 N. W. 40. The subject is exhaustively annotated in Annotation, 49 A. L. R. (2d) 694, 706.

[2]Langford Elec. Co. v. Employers Mutual Ind. Corp. 210 Minn. 289, 297 N. W. 843.

■ Parties to insurance contracts, as in other contracts, absent legal prohibition or restriction, are free to contract as they see fit, and the extent of liability of an insurer is governed by the contract they enter into.[3]

■ Subject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts.[4]

■ Inasmuch as the language of an insurance policy is that of the insurer, any reasonable doubt as to its meaning must be resolved in favor of the insured,[5] but the court has no right to read an ambiguity into plain language of an insurance policy in order to construe it against the one who prepared the contract.[6]

■ Where there is no ambiguity there is no room for construction. In such cases, the parties being free to contract, the language used must be given its usual and accepted meaning.[7]

■ Contracts of insurance, like other contracts, must be construed according to the terms the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense,[8] so as to give effect to the intention of the parties as it appears from the entire contract.[9]

■ The endorsements or riders attached to an insurance contract are part of the contract, and the endorsements and the policy must be construed together.[10]

■ A policy and endorsements should be construed, if possible, so

---

[3]Maryland Cas. Co. v. American Lbr. & Wrecking Co. 204 Minn. 43, 282 N. W. 806, 119 A. L. R. 1269; Juster v. John Hancock Mutual Life Ins. Co. 194 Minn. 382, 260 N. W. 493.

[4]Shake v. Westchester Fire Ins. Co. 158 Minn. 40, 196 N. W. 804.

[5]Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108; Motor Vehicle Cas. Co. v. Smith, 247 Minn. 151, 76 N. W. (2d) 486.

[6]Pickens v. Maryland Cas. Co. 141 Neb. 105, 2 N. W. (2d) 593.

[7]Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co. 235 Minn. 243, 50 N. W. (2d) 629.

[8]Tomlyanovich v. Tomlyanovich, *supra.*

[9]Tomlyanovich v. Tomlyanovich, *supra;* Dawes v. Brotherhood of Locomotive Firemen and Enginemen, 216 Minn. 411, 13 N. W. (2d) 28.

[10]Wyatt v. Wyatt, 239 Minn. 434, 58 N. W. (2d) 873.

as to give effect to all provisions, but, where provisions in the body of the policy conflict with an endorsement or rider, the provision of the endorsement governs.[11]

Exclusions in a policy or endorsements are as much a part of the contract as other parts thereof and must be given the same consideration in determining what is the coverage.[12]

It is apparent that this policy and the attached endorsements, as written, clearly exclude liability arising out of the use, ownership, or operation of an automobile owned by Frank E. Oja. The two actions brought by the trustees for the heirs and next of kin of the employees of Oja's, Inc., are predicated upon the claim that Frank E. Oja, personally, was the owner of the automobile involved. Obviously it was necessary to so allege because plaintiffs were employees of the corporation and all rights of recovery for their death arising out of and in the scope of their employment are limited by workmen's compensation acts. The cause of action must fail as far as vicarious liability is concerned unless ownership of the automobile can be established in Frank E. Oja. If, on the other hand, it can be established that Frank E. Oja, rather than Oja's, Inc., is the owner of the automobile, then clearly liability on the part of third-party defendant is expressly excluded by the policy. In either event, the third-party defendant insurer is not liable. It must follow that it is under no obligation to defend the action.

In his motion for leave to file a supplementary complaint, third-party plaintiff alleges neither mutual mistake, fraud, or other inequitable conduct that would justify a reformation of a written instrument. We have repeatedly held that the evidence to justify such reformation of a written instrument must be clear, precise, and convincing.[13]

The motion for leave to file a supplementary complaint was based on all the files and proceedings herein. In an affidavit submitted by third-party plaintiff in support of his motion for summary judgment, he said among other things:

---

[11]Wyatt v. Wyatt, *supra*.

[12]Wyatt v. Wyatt, *supra*.

[13]Farmers' Store v. Delaware Farmers' Mutual Fire Ins. Co. 240 Minn. 170, 59 N. W. (2d) 889; Glaser v. Alexander, 247 Minn. 130, 76 N. W. (2d) 682.

"That affiant is not and never has been the owner, either actual or registered, of the 1956 Chevrolet station wagon referred to herein. That the title has never been registered in his name, he has not furnished any of the consideration for its purchase, he has not paid for any of its operating expenses, and *carries no insurance in his individual name covering the use or operation of said motor vehicle.*" (Italics supplied.)

In another affidavit he said, among other things:

"* * * the agent [for insurer] was informed and knew that affiant did not own any automobiles in his own name and that all of the automobiles were owned by and registered in the name of Oja's, Inc. Affiant had numerous conversations with said agent over a course of years in which he pointed out his desire to be fully covered for any conceivable type of claims for bodily injury or property damage which might arise out of the operations of the corporation Oja's, Inc., out of the ownership, maintenance and use of the premises used by the corporation and out of the automobiles that were owned by and registered in the name of the corporation."

The insurance involved here does cover all liability arising out of the automobiles owned by the corporation. It is only in the event that the automobile involved is owned by Frank E. Oja personally that liability can result from the actions here involved. There is nothing in the affidavits that would show either a mutual mistake, fraud, or any other inequitable conduct which would justify a reformation of the contract. Under these circumstances, there was no abuse of discretion in denying the motion to vacate the summary judgment and to permit third-party plaintiff leave to file the supplementary complaint. Taken at their best, the supporting affidavits establish no grounds for reformation.

Affirmed.