Harold R. CARLSON, et al., Respondents,

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY,**
Appellant.

No. C1–94–1104.

Court of Appeals of Minnesota.

Feb. 7, 1995.

Review Denied April 27, 1995.

---

Jack D. Moore, Jack D. Moore & Associates, St. Paul, for appellant.

William M. Schade, Somsen Schade & Shaffer, New Ulm, for respondents.

Considered and decided by SCHUMACHER, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Mutual Service Casualty Insurance Co. (MSI) appeals from: the trial court's denial of its motions to dismiss; the denial of its new trial motion; and the court's entry of judgment on Harold Carlson's loss of consortium claim. Harold and Shirley Carlson also appeal, arguing that the trial court erred by determining that MSI's maximum liability is the $100,000 underinsurance coverage limit; that the court erred by granting a conditional new trial or a reduction in damages awarded for future loss of consortium; and that the court erred by disallowing certain costs, disbursements and witness fees. We affirm.

## FACTS

Shirley Carlson was injured in an automobile collision in August, 1991. The collision was caused by the negligence of the other driver. Harold Carlson was not in the car at the time and was not physically injured. The Carlsons notified their insurance carrier, MSI, of their intent to settle with the other driver's insurer (*Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983) notice). MSI then substituted its payment to preserve its subrogation rights.[1]

The Carlsons sued MSI for underinsurance (UIM) benefits, based on Shirley Carlson's bodily injuries and Harold Carlson's claim for loss of consortium. Before trial, MSI moved to dismiss the consortium claim, arguing that it was not compensable under the UIM policy because it did not involve a bodily injury to Harold.

The applicable UIM policy language provides that

[w]e will pay damages *for **bodily injury*** an **insured** is legally entitled to collect from the owner or driver of an **underinsured motor vehicle.**

(Emphasis added.) The policy defines bodily injury as "bodily injury to a person and sickness, disease or death which results from it," and also provides the following limits of liability:

1. MSI brought suit against the other driver's estate, but later settled the claim for the amount

Under "Each Person" is the amount of coverage for all damages *due to **bodily injury*** to one person. Under "Each Accident" is the total amount of coverage for all damages *due to **bodily injury*** to two or more persons in the same accident.

(Emphasis added.)

The trial court denied MSI's motion to dismiss and the case went to trial. By special verdict form, the jury awarded Harold Carlson a total of $70,124 for his past and future loss of consortium. MSI then moved for JNOV or a new trial on the consortium claim, and moved for amended findings. The court determined that the consortium claim qualified for UIM coverage, but ordered a remittitur down to $36,124. The court also amended its findings of fact to include a finding that MSI's maximum liability in the case was the $100,000 limit on the UIM coverage. The court then entered judgment in favor of the Carlsons for $100,000 plus post-judgment interest, costs, and disbursements.

On appeal, MSI argues that the consortium claim was not compensable under their UIM coverage as a matter of law. The Carlsons challenge the trial court's order, arguing that the court erred by determining that MSI's maximum liability was the policy limit of $100,000, that the court erred by reducing the award of damages on the consortium claim, and that the court erred by disallowing certain costs and witness fees.

## ISSUES

1. Did the trial court err by concluding that Harold Carlson's loss of consortium claim was compensable under the language of the UIM policy?

2. Did the trial court err by finding that MSI's maximum liability is the UIM policy limit of $100,000?

3. Did the trial court abuse its discretion by reducing the jury's award of damages for the consortium claim?

of the substituted payment.

4. Did the trial court err by denying certain costs and witness fees?

## ANALYSIS

1. The trial court's decision in this case was based on its interpretation of MSI's policy. The "interpretation of insurance contract language is a question of law as applied to the facts presented." *Meister v. Western Nat'l Mut. Ins.*, 479 N.W.2d 372, 376 (Minn. 1992); *accord State Farm Ins. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992) ("Insurance coverage issues are questions of law for the court").

Insurance policies are similar to other contracts because they are matters of agreement between the parties. The court's function is "to determine what the agreement was and enforce it." *Fillmore v. Iowa Nat'l Mut. Ins.*, 344 N.W.2d 875, 877 (Minn.App. 1984). The extent of an insurer's liability is governed by the contract into which the parties have entered. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24–25 (1960). In construing an insurance contract, the policy must be considered as a whole. *Henning Nelson Constr. v. Fireman's Fund Am. Life Ins.*, 383 N.W.2d 645, 652 (Minn.1986). Appellate courts must not create an ambiguity where none exits in order to afford coverage. *Columbia Heights Motors v. Allstate Ins.*, 275 N.W.2d 32, 34 (Minn.1979).

On appeal, MSI argues that Harold Carlson's loss of consortium claim was not covered by the UIM policy because the policy grants coverage only to "damages for bodily injury." MSI reasons that Harold's claim is not covered because Harold did not sustain bodily injury in the automobile accident. The Carlsons, however, argue that the policy language provides coverage for Harold Carlson's loss of consortium claim because the policy is ambiguous and must be construed against MSI. The Carlsons argue that the policy is ambiguous because it is internally inconsistent in describing the damages covered: while the coverage language refers to damages "for bodily injury," the limitation language refers to damages "due to bodily injury." We conclude, without finding an ambiguity, that the trial court properly determined that the UIM, when MSI "came in to take the place of the tortfeasor," provides coverage for the loss of consortium claim.

Initially, we note that although both parties rely on recent cases by this court, neither *Beukhof v. Minnesota Mut. Fire and Casualty*, 502 N.W.2d 223, (Minn.App.1993), *pet. for rev. denied* (Minn. Aug. 6, 1993) nor *Sicoli v. State Farm Mut. Auto Ins.*, 464 N.W.2d 300 (Minn.App.1990), specifically addresses this issue. In *Sicoli* and *Beukhof*, this court held that for both the purposes of establishing policy limits and of measuring the insurance recovered and the amount of underinsured benefits available, a claim for loss of consortium is not a separate bodily injury but rather must be considered with the underlying injured spouse's personal injury claim. *Sicoli*, 464 N.W.2d at 303; *Beukhof*, 502 N.W.2d at 225.

We conclude the trial court properly denied the dismissal and JNOV motions and determined that MSI's UIM policy provides coverage to Harold Carlson's loss of consortium claim. The trial court properly determined that the claim was compensable in light of the nature of a loss of consortium claim. Although undeniably derivative, a spouse's claim for loss of consortium has *always* been based upon a bodily injury (albeit to the other spouse). *See Rowe v. St. Paul Ramsey Medical Ctr.*, 472 N.W.2d 640, 643 (Minn.1991) (loss of consortium, although recognized as a separate claim, is bound by same liability cap as underlying personal injury action under Minn.Stat. § 466.04); *Huffer v. Kozitza*, 375 N.W.2d 480, 482 (Minn. 1985) (wife's claim for loss of consortium, while derivative from husband's personal injury claim, is a separate claim with separate injuries); *Thill v. Modern Erecting Co.*, 284 Minn. 508, 513, 170 N.W.2d 865, 869 (1969) (recognizing wife's right to consortium claim for negligent injuries to husband); *Beukhof*, 502 N.W.2d at 225 (husband's claim for loss of consortium was not a separate injury); *Sicoli*, 464 N.W.2d at 303 (husband's loss of consortium damages caused by wife's bodily injury); *Brandt v. State*, 428 N.W.2d 412, 416–17 (Minn.App.1988) (loss of consortium bound by same limitations as underlying personal injury action).

In the absence of an explicit limitation or exclusion providing that a claim for loss of consortium is not covered, policy language providing coverage for damages "for bodily injury" or coverage "due to bodily injury" for one spouse also provides coverage for the loss of consortium claims for another. *See Beukhof,* 502 N.W.2d at 225 (granting coverage for damages "because of" bodily injury); *Sicoli,* 464 N.W.2d at 302 (granting coverage for damages "due to" bodily injury). MSI failed to explicitly deny coverage for consortium claims in the policy language. A tortfeasor is generally liable for consortium claims. We decline to furnish such an exclusion to the insurer on appeal. If MSI had intended to limit its UIM coverage, it could have explicitly provided that limitation in the policy.

■ 2. We also conclude that the trial court properly determined that MSI's maximum liability is the UIM policy limit of $100,000. As noted earlier, the extent of an insurer's liability is governed by the insurance contract. *Bobich,* 258 Minn. at 294, 104 N.W.2d at 24–25.

Here, the UIM policy contained a limit of $100,000 per person. Because Harold Carlson's loss of consortium claim is not an independent claim for personal injury, but is derivative from Shirley Carlson's personal injury claim, the trial court's amended finding was entirely proper. *See Sicoli,* 464 N.W.2d at 303.

■ 3. We next address whether the court erred by granting a conditional new trial on the consortium claim unless the Carlsons agreed to accept a reduced damage award. The Minnesota Supreme Court has held that the trial court's decision to grant a new trial because of excessive damages and the court's decision to remit a verdict is reviewed under an abuse of discretion standard. *Advanced Training Sys. v. Caswell Equip. Co.,* 352 N.W.2d 1, 11 (Minn.1984) (conditional new trial); *Hanson v. Chicago R.I. & Pac. R.R.,* 345 N.W.2d 736, 739 (Minn. 1984) (remittitur); *Kinikin v. Heupel,* 305 N.W.2d 589, 596 (Minn.1981) (same).

On appeal, the Carlsons argue that the trial court erred by granting the conditional new trial because the jury's $66,124 award was supported by the evidence and was not the product of prejudice or passion. The Carlsons assert that the court abused its discretion by substituting its judgment for the jury's. MSI, however, argues that the remittitur was not an abuse of discretion, and that the issue is effectively moot because, when added to Shirley's damages, even the lower remitted amount still exhausts MSI's UIM coverage limit of $100,000.

While the trial court's reduced award of damages of $36,124 for future loss of services and companionship appears conservative, we cannot say that the conditional grant of a new trial was an abuse of discretion. Moreover, we note that the Carlsons are not entitled to more than the $100,000 limit of liability as provided by the clear policy language.

■ 4. Finally, the Carlsons argue that the trial court erred by disallowing certain costs and witness fees. The trial court's award of costs and fees is reviewed under an abuse of discretion standard. *See DeSutter v. Township of Helena,* 489 N.W.2d 236, 241 (Minn.App.1992) (expert witness fees under Minn.Stat. § 357.25) *pet. for rev. denied* (Minn. Sept. 30, 1992); *Peller v. Harris,* 464 N.W.2d 590, 594 (Minn.App.1991) (review of costs under Minn.Stat. § 549.04). Generally, the award of costs and expert witness fees are governed by statute. *See* Minn.Stat. §§ 549.04 (1990) (reasonable costs paid or incurred including fees and mileage); 357.25 (1990) (expert witness fees).

Here, the Carlsons claimed a total of $4,193.45 in costs and disbursements; the trial court awarded $1,222 less than the Carlsons requested. The Carlsons argue the court abused its discretion. We disagree.

■■ We first note the Carlsons' argument that the court abused its discretion by denying their request for filing and publication expenses they expended against the other driver's estate. That argument fails because the Carlsons never identified an entitlement to such expenses. Next, the Carlsons argue that the court erred by granting only $1,200 plus mileage for expert witness fees for Shirley's physician, and by granting only $720 plus mileage in witness fees for the

farm expert. In its memorandum, the trial court stated that it eliminated travel time and professional consultation from the requested amount. We find the trial court's decision to eliminate these costs was a legitimate discretionary call. *See Spinett v. Peoples Natural Gas,* 385 N.W.2d 834, 840 (Minn.App.1986).

■ Finally, the court allowed only $10 of the Carlsons' request for $342 in witness fees for the state trooper who testified. The court noted that the trooper did not testify as an expert, and determined that, while the Carlsons may choose to pay him more, the $10 plus mileage was the full amount allowed by statute. *See* Minn.Stat. § 357.22 (1990) (non-expert witness fees set at $10 per day). Because the trooper did not testify as an expert and offered only his observations of the accident scene, the court's award of the statutory amount of witness fees, although conservative, was proper.

### DECISION

The trial court properly denied MSI's motions to dismiss or grant JNOV on Harold Carlson's loss of consortium claim. The trial court properly determined that MSI's maximum liability is the UIM policy limit of $100,-000. The court properly exercised its discretion by granting a conditional new trial or remittitur of Harold Carlson's future loss of consortium. Finally, the trial court properly exercised its discretion by awarding costs and witness fees.

**Affirmed.**