Thomas G. STEELE and Sharon
Steele, Respondents,

v.

GREAT WEST CASUALTY COMPANY,
Respondent,

and

Liberty Mutual Insurance
Company, Appellant.

No. C5–95–1388.

Court of Appeals of Minnesota.

Dec. 12, 1995.

Review Denied Feb. 9, 1996.

David J. Moskal, James S. Ballentine, Schwebel, Goetz, Sieben & Moskal, Minneapolis, for Thomas G. Steele and Sharon Steele.

Michael W. McNee, Andrea E. Reisbord, Cousineau, McGuire & Anderson, Minneapolis, for Great West Cas. Co.

Scott P. Drawe, Stich, Angell, Kreidler & Muth, P.A., Minneapolis, for Liberty Mut. Ins. Co.

Considered and decided by PARKER, P.J., and LANSING and FOLEY, JJ.*

## OPINION

LANSING, Judge.

Great West Casualty Company and Liberty Mutual Insurance Company both insured Thomas Steele's semi-tractor. The district court construed Great West's policy as limited to the semi-tractor's nonbusiness use, and on motion for summary judgment, denied coverage for personal injury protection (PIP) and uninsured motorist (UM) claims arising out of the semi-tractor's business use. Liberty Mutual appeals, disputing the construction of Great West's policy.

## FACTS

This action arises out of an accident in which Thomas Steele, who was driving a semi-tractor attached to an unloaded trailer, collided with an automobile driven by an uninsured motorist.

■ Steele owned the semi-tractor and leased it to Rite–Way Transport Co., Inc. (Rite–Way). As part of the lease, both parties agreed to obtain public liability and property damage insurance. The lease also provided that Steele, as the lessor, would be responsible for procuring his own "bobtail" [1] insurance.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

1. Bobtail limitations typically restrict coverage under a policy to injuries sustained while a driver was "bobtailing" an insured vehicle, i.e., operating a semi-tractor without a trailer attached to it. *National Indem. Co. of Minn. v. Ness,* 457

N.W.2d 755, 757 (Minn.App.1990), *review denied* (Minn. Sept. 14, 1990). We have also indicated, however, that the term "bobtailing" broadly encompasses the "non-trucking use" of a vehicle. *Great W. Casualty Co. v. MSI Ins. Co.,* 482 N.W.2d 527, 528 (Minn.App.1992), *review denied* (Minn. June 30, 1992). Bobtail coverage will not apply if the driver-lessor was in the business of

Liberty Mutual issued a policy under which Rite–Way is a named insured. The policy also provides PIP and UM coverage for Steele, by virtue of his leasing arrangement with Rite–Way.

Great West issued an insurance policy to Steele for the semi-tractor that he was driving at the time of the accident. The liability coverage section of the policy provides, in part, that Great West

will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto" only if:

1. A covered "auto" is not used to carry property in any business; and

2. A covered "auto" is not used in the business of anyone to whom the "auto" is rented, leased or loaned.

A PIP endorsement attached to the policy provides a similar, although not identical, limitation. The UM endorsement contains no comparable language.

On the day of the accident, Steele made various deliveries and pick-ups with his semi-tractor. Under dispatch orders from Rite–Way, Steele had picked up an empty trailer in Minneapolis and was heading to New Prague to drop it off in exchange for a loaded trailer when the accident occurred.

Liberty Mutual does not dispute that Steele was using his semi-tractor for a business-related use at the time of the accident. Nor does Liberty Mutual dispute that the Great West policy excludes liability coverage under such circumstances. Liberty Mutual argues, however, that the endorsements attached to the policy require Great West to provide benefits for Steele's PIP and UM claims. Specifically, Liberty Mutual contends that the liability coverage limitation in Great West's policy does not extend to PIP or UM coverage.

Considering the policy as a whole, the district court concluded that the liability coverage limitation, together with several refer-ences to "non-trucking use" in various documents contained in the policy, operated to bar Steele's PIP and UM claims against Great West. The district court granted summary judgment in favor of Great West, and Liberty Mutual appeals.

## ISSUE

Does the policy issued by Great West provide coverage for personal injury protection and uninsured motorist claims arising out of the nonbusiness use of the insured's vehicle?

## ANALYSIS

 The construction of an insurance policy presents a question of law which the district court may properly decide on summary judgment and which we review de novo. *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978). When interpreting an insurance policy, a court should examine the insurance policy, together with any endorsements. *Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Exclusions merit the same consideration as other provisions in a policy or endorsement. *Id.* at 295, 104 N.W.2d at 24–25. An examination of any declarations is also crucial to the analysis of the scope of a policy's coverage. *Seaway Port Auth. of Duluth v. Midland Ins. Co.,* 430 N.W.2d 242, 248 (Minn.App. 1988).

 If possible, a court should construe a policy so as to give effect to all provisions. *Bobich,* 258 Minn. at 294–95, 104 N.W.2d at 24. When provisions of a policy conflict with an endorsement or rider, the provisions of the endorsement govern. *Id.* at 295, 104 N.W.2d at 24. Generally, any reasonable doubt as to the meaning of language in a policy should be resolved in favor of the insured. *Id.* at 294, 104 N.W.2d at 24.

 In support of its argument that the Great West policy does not provide PIP or UM coverage under the circumstances of this case, Great West relies on another key principle of construction: policies should be interpreted to give effect to the intent of the

---

the lessee at the time of the accident. *See, e.g., Reeves v. B & P Motor Lines, Inc.,* 82 N.C.App. 562, 346 S.E.2d 673, 675 (1986) (holding that policy applied when accident occurred while driver was driving home after cancelling lease with trucking company).

parties as it appears from the entire contract. *Id.*

According to Great West's interpretation of the various documents that comprise the entire policy, the parties intended for the policy to cover only those claims arising out of Steele's non-trucking use of his semi-tractor. Great West asserts that the policy declarations form, for example, sets out the intent of the policy with the following caption that runs across the top of the initial declarations sheet: "COMMERCIAL AUTO COVERAGE PART NON–TRUCKING USE COVERAGE FORM DECLARATIONS." In the certificate of insurance, in a box under a column labeled "Type of Insurance," an "X" is marked next to the category of "NON–TRUCKING USE." In addition, in a space designated for "Special Items," the certificate states that it does not apply to

1. A covered "auto" while used to carry property in any business or,
2. While used in the business of anyone to whom the "auto" is rented, leased or loaned.

The language in the certificate is similar to the language used in the bobtail limitation of the liability coverage section of the policy. Not only the liability coverage section, but also the PIP endorsement to the policy, according to Great West, contains a bobtail limitation. Under a section labeled "Exclusions," the PIP endorsement provides in part that the company will not pay PIP benefits for bodily injury

[s]ustained by any person arising out of the maintenance or use of a "motor vehicle":

a. Being used in the business of transporting persons or property, or
b. Furnished by the employer of the Named Insured or "family member."

Great West asserts that these explicit bobtail limitations, together with the various references to "non-trucking use," indicate that the parties intended for the entire policy, including the PIP and UM endorsements, to apply only in claims arising out of the non-trucking use of Steele's semi-tractor.

Liberty Mutual, on the other hand, argues that any bobtail limitations in Great West's policy should restrict only Steele's *liability* coverage, not his PIP and UM claims, even though he was driving his semi-tractor for a non-trucking use at the time of the accident. As the basis for its argument, Liberty Mutual stresses that Great West's UM endorsement contains no explicit bobtail limitation. The lack of an explicit limitation in the UM endorsement, according to Liberty Mutual, conflicts with the bobtail limitation in the liability coverage section and creates an ambiguity. Because endorsements should govern in cases of ambiguity, Liberty Mutual concludes that the district court should have applied the UM endorsement in this case without construing an implicit bobtail limitation.

Liberty Mutual further argues that, although the PIP endorsement apparently contains a bobtail limitation, the circumstances here fit within an exception to the limitation. The relevant section of the PIP endorsement provides that the endorsement's limitation "does not apply to * * * the 'insured motor vehicle.'" The PIP endorsement defines "insured motor vehicle" as

a "motor vehicle" with respect to which:
(a) The "bodily injury" liability insurance of the Coverage Form or policy applies and for which a specific premium is charged, and
(b) The "named insured" is required to maintain security under the provisions of the Minnesota no-fault automobile insurance act.

Liberty Mutual argues that Steele's semi-tractor was an "insured motor vehicle" within the meaning of this provision. In particular, Liberty Mutual contends that the bodily injury liability insurance of the coverage form "applies," even though the coverage form's bobtail limitation may preclude liability coverage in cases such as this, when the insured was engaged in a trucking activity at the time of the accident. Under Liberty Mutual's analysis, both endorsements provide coverage for Steele's UM and PIP claims.

We disagree with Liberty Mutual's assertion that the absence of an explicit bobtail limitation in the UM endorsement results in an ambiguity. Ambiguity does not

arise merely because a policy must be read with some care. *Farmers Home Mut. Ins. Co. v. Lill,* 332 N.W.2d 635, 638 (Minn.1983) (en banc) (citing *Nordby v. Atlantic Mut. Ins. Co.,* 329 N.W.2d 820, 823 (Minn.1983)).

A careful reading of the Great West policy supports the view that the parties intended to create a policy that would provide coverage for Steele's use of his semi-tractor only for nonbusiness purposes. The text of the policy itself, in the liability coverage section, explicitly restricts Steele's coverage to the nonbusiness use of his semi-tractor. The PIP endorsement provides another limitation regarding the nonbusiness use of the insured vehicle. Although the UM endorsement does not expressly exclude coverage of claims resulting from the business-related use of Steele's semi-tractor, neither does the UM endorsement expressly include coverage of such claims.

■ The multiple non-trucking use references elsewhere in the policy lead us to conclude that a non-trucking use limitation pervades the entire policy and extends to the UM endorsement. Beginning with the declarations to the policy and ending with the certificate of insurance, we find references indicating that the policy is one for the "non-trucking use" of Steele's vehicle. Although the policy does not define "trucking," it defines "trucker" as "any person or organization engaged in the business of transporting property by 'auto' for hire." In other words, the definition equates trucking use with business use. By extension, we interpret the policy's references to non-trucking use as references to the nonbusiness use of the insured vehicle.

The policy's various mentions of "non-trucking use" reinforce our conclusion that the lack of an express non-trucking use limitation in the UM endorsement does not require Great West to provide coverage for UM or PIP claims arising out of the business use of Steele's semi-tractor. Great West and Liberty Mutual agree that Steele's accident occurred while he was using the semi-tractor for a trailer that Rite–Way had hired him to carry. Because this did not constitute a "non-trucking use" within the meaning of Great West's policy, the policy does not cover Steele's PIP or UM claims.

■ Our interpretation of Great West's policy not only reflects the demonstrated intent of the parties, but it also produces a result that is consistent with public policy. As applied to the facts of this case, the bobtail limitation prevents Steele from obtaining PIP and UM benefits from Great West. Steele may nevertheless recover under the Liberty Mutual policy, which does not exclude claims arising out of the business use of his vehicle. Because Steele thus experiences no gaps in coverage between the two policies, we hold that the bobtail limitation in the Great West policy is not void as contrary to public policy. We find persuasive the reasoning in *Integral Ins. Co. v. Maersk Container Serv. Co.,* 206 Mich.App. 325, 520 N.W.2d 656, 659 (1994) (per curiam) (holding that bobtail limitation was not void when two policies provided continuous insurance coverage), *appeal denied,* —— Mich. ——, 533 N.W.2d 586 (1995).

As a second issue on appeal, Liberty Mutual also argued that, if the Great West policy provided UM and PIP coverage, the two insurers should allocate equally any responsibility. We do not reach this issue, because we conclude that Great West's policy does not provide UM or PIP coverage.

## DECISION

The policy issued by Great West did not provide coverage for PIP or UM claims arising out of the business use of Steele's vehicle.

**Affirmed.**