**Michael BUNDUL, as Trustee for the Heirs and Next of Kin of Carol Bundul, and individually, Respondent,**

v.

**TRAVELERS INDEMNITY COMPANY d/b/a Travelers, Appellant,**

**Dick Devine, et al., Defendants.**

**No. A07–1627.**

Court of Appeals of Minnesota.

Aug. 5, 2008.

Charles D. Slane, Michael Courtney, Terry & Slane P.L.L.C., Bloomington, MN, for respondent.

Daniel A. Haws, Kari L. Gunderman, Murnane Brandt, St. Paul, MN, for appellant.

Andrew L. Davick, Meshbesher & Spence, Ltd., Rochester, MN, for amicus curiae Minnesota Association for Justice.

Considered and decided by HUDSON, Presiding Judge; SHUMAKER, Judge; and MUEHLBERG, Judge.*

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

SHUMAKER, Judge.

Appellant challenges the district court's ruling that a household exclusion in respondent's umbrella liability policy is void and unenforceable. Because we hold the exclusion does not violate the no-fault act, we reverse.

## FACTS

Benjamin Bundul resided with his parents, Michael and Carol Bundul. On November 28, 2003, he was driving his parents' car, with their permission, when he collided with a parked fire truck. Carol Bundul, a passenger in the car, was fatally injured.

At the time of the collision, Michael and Carol Bundul were the named insureds in two insurance policies. The first was written by Charter Oak Fire Insurance Company and covered automobile liability up to $500,000. The second was a personal liability umbrella policy written by appellant Travelers Indemnity Company. Benjamin Bundul was classified as an insured under both policies.

In a wrongful-death action against Benjamin Bundul, Charter Oak paid its policy limit in settlement. But when the trustee for Carol Bundul's next of kin sought benefits under the umbrella policy, Travelers denied liability coverage altogether, citing an exclusion for injury to any person related by blood to an insured who is also a resident of the same household as the injured person.

The trustee then brought this declaratory judgment action to have the exclusion declared void and unenforceable. Travelers moved for summary judgment. The district court denied the motion, ruled that the so-called "household exclusion" is invalid and unenforceable under Minnesota's no-fault act, and ordered that the trustee "shall recover insurance coverage up to the $1,000,000.00 PLUS policy limit." Contending that the district court erred as a matter of law in its ruling and order, Travelers appealed.

## ISSUE

If an underlying primary automobile insurance policy provides the coverages mandated by the Minnesota No–Fault Automobile Insurance Act, does a "household exclusion" in an umbrella personal liability policy contravene either the purpose or the language of the act?

## ANALYSIS

■ Travelers contends that its clear "household exclusion" in the Bunduls' umbrella insurance policy does not violate any rule or principle of law and is legally enforceable. The trustee argues that Minnesota's abolition of family tort immunity was assimilated into the Minnesota Automobile Insurance No–Fault Act, thus making Travelers' household exclusion, which bars recovery of insurance benefits for an intrafamily tort, unenforceable. The trustee also urges that the exclusion conflicts with the no-fault act's underlying public policy of "compensating victims of automobile accidents."

■ There are no facts in dispute and, thus, we "need only review the [district] court's application of the law" to the umbrella insurance policy. *Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.*, 433 N.W.2d 82, 84–85 (Minn.1988). The interpretation of the terms of an insurance policy is a question of law that we review de novo. *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn.1998).

■ Insurance policies are contracts to which the general rules of contract law apply unless a statutory provision dictates otherwise. *Waseca Mut. Ins. Co. v. Nos-*

*ka,* 331 N.W.2d 917, 926 (Minn.1983). The extent of an insurer's obligations to its insured is governed by the language of the contract to which the parties agreed so long as the policy does not omit legally required coverage or contravene applicable statutes. *Frey v. United Servs. Auto. Ass'n,* 743 N.W.2d 337, 341 (Minn.App. 2008).

At issue is a provision in an umbrella liability policy of insurance. The supreme court has described the nature of an umbrella policy as providing coverage over and above the limit of an underlying policy:

> An umbrella policy, typically, requires the insured to carry underlying liability insurance up to a certain limit with a different insurance company. The umbrella insurer then provides an "umbrella" over this underlying coverage by agreeing to pay that part of any claim against the insured that exceeds the limits of the underlying coverage up to the limits of the umbrella. This arrangement enables the umbrella insurer to offer high limits at a relatively modest premium.

*Jostens, Inc. v. Mission Ins. Co.,* 387 N.W.2d 161, 165 (Minn.1986)

■ The Bunduls were insured under a primary policy with limits that exceeded those required by law. The Travelers umbrella policy provided coverage of "$1,000,-000 Per Occurrence." But the umbrella policy contained an exclusion from coverage—referred to as a "household exclusion"—for any injury to, or death of, "any person who is related by blood ... to an 'insured' and who is a resident of the household of that person." The trustee does not appear to dispute either the existence or the clarity of the household exclusion but rather contends that it is unenforceable. Under general contract law, as applied to insurance policies, the parties are free to agree to exclude from coverage particular risks, losses, or persons. *Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). As noted by the supreme court in *Jostens,* and as evident from the record here, the various exclusions in the umbrella policy, including the household exclusion, resulted in a high policy limit for "a relatively modest premium," namely $103 a year. *Jostens,* 387 N.W.2d at 165.

■ Despite the express agreement of insurer and insured, no exclusion will be valid and enforceable if it contravenes the law because the subject matter of any contract must be legal. *Hertz Corp. v. State Farm Mut. Ins. Co.,* 573 N.W.2d 686, 689–90 (Minn.1998). Our issue, then, is whether Travelers' household exclusion is precluded by the Minnesota No–Fault Automobile Insurance Act. *See* Minn.Stat. §§ 65B.41–.71 (2006).

The trustee argues that the household exclusion is precluded by express statutory language and by public policy. As to the latter basis for preclusion, the trustee contends that "Minnesota has a well established public policy of compensating victims of automobile accidents." Indeed, an express purpose of the no-fault law is "to relieve the severe economic distress of uncompensated victims of automobile accidents." Minn.Stat. § 65B.42(1). To accomplish this purpose, the no-fault act requires "automobile insurers to offer and automobile owners to maintain automobile insurance policies or other pledges of indemnity which will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident[.]" *Id.* Furthermore, to accomplish the purpose of ensuring that there will be no "uncompensated victims" of automobile accidents, the no-fault act specifies the levels of compensation the insurer

must provide in two categories of coverage: (1) basic economic loss benefits and (2) residual liability insurance. Minn.Stat. § 65B.49, subds. 2, 3. The basic economic loss benefits "subject to any applicable ... exclusions" cover, among other losses, medical and funeral expenses and "survivor's replacement services loss." Minn. Stat. § 65B.44, subd. 1. The minimum required liability insurance limits are stated in the no-fault act as $30,000 as to one person in one accident, and $60,000 as to two or more persons in any one accident. Minn.Stat. § 65B.49, subd. 3. Thus, the amounts of coverage necessary to satisfy the state's public policy of preventing automobile accident victims from being "uncompensated" are those amounts required by the act. Arguably, once the required amounts have been made available to an accident victim, the underlying purpose and public policy of the no-fault act have been fulfilled.

The Bunduls' primary policy exceeded the mandatory minimum coverage and provided a liability limit of $500,000. The primary insurer paid the entire policy limit, with $487,436.12 being paid to the survivors of Carol Bundul, and the balance to the fire department's insurer for damage to the fire truck. Thus, strictly in terms of the fundamental public policy on which the trustee premises his first argument, there has been no violation of the no-fault act here. The next of kin of Carol Bundul are not "uncompensated victims" of an automobile accident. Rather, they have been compensated beyond the level of the express statutory requirements that embody the public policy that the trustee urges in arguing the invalidity of the household exclusion.

Nothing in the no-fault act addresses the issue of the specific amount of compensation for automobile accident victims beyond the stated minimums. That issue is left open for resolution through the tort system. Beyond the stated minimums, no public policy concern is melded to any particular sum of money. We do not intend to suggest, however, that the statutory minimum insurance limits will necessarily be sufficient compensation for the loss of a loved one, but only that those limits satisfy the express public policy goal of the no-fault act of ensuring that automobile accident victims will not go "uncompensated."

 Minimum insurance coverages for injury, death, and other specified losses resulting from automobile accidents in Minnesota are governed by the no-fault act. This act is remedial in nature and is to be liberally construed to accomplish its purposes. *Miklas v. Parrott,* 684 N.W.2d 458, 461 (Minn.2004). Insurance "policy terms that conflict with the No–Fault act will be held invalid." *Kwong v. Depositors Ins. Co.,* 627 N.W.2d 52, 55 (Minn.2001); *see also Perfetti v. Fidelity & Cas. Co. of N.Y.,* 486 N.W.2d 440, 443 (Minn.App.1992) (invalidating a clause in a policy denying uninsured motorist coverage to family members as violating the no-fault act). But an insurance policy term that does not impact or impair the remedial purpose of the no-fault act is not precluded by the act. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 625 N.W.2d 160, 165 (Minn.App.2001), *review denied* (Minn. June 27, 2001).

 The no-fault act does not distinguish between primary insurance and umbrella coverage but rather uses the term "plan of reparation security" to describe any "contract ... under which there is an obligation to pay" basic economic loss and residual liability benefits. Minn.Stat. § 65B.43, subd. 15. Whatever it is called and however it is classified by the contract, a plan of reparation security must provide the benefits required by the no-fault act to

be valid. Once the statutory requisites have been met, nothing in the no-fault act addresses the issue of further coverage, such as that provided by an umbrella liability policy.

As a contractual condition of the umbrella coverage, the Bunduls were required to obtain and maintain primary liability insurance in various amounts, all of which satisfied, and exceeded, the no-fault mandatory liability minimums. Thus, we cannot view the umbrella policy separately from the primary policy. Noting that the no-fault act does not distinguish between types of coverage, and recognizing that the umbrella policy cannot stand alone but must by express agreement be positioned on top of primary liability insurance, these policies together clearly satisfy the no-fault requirement of a "plan of reparation security" that provides the mandated insurance coverage.

 The trustee argues that, to be valid, an automobile insurance policy cannot contain a household exclusion because the policy would thereby preclude coverage of a class of accident victims. The no-fault act makes no distinctions among accident victims. But the trustee's argument is too broad. No class of accident victims may be precluded from the mandated coverages. However, no language in the no-fault act renders invalid an exclusion of a particular class of accident victims from coverage beyond that mandated by the act. Once an insurance policy alone, or a primary and an umbrella policy together, has satisfied the coverage mandate, no further no-fault act regulation of coverages exists.

Through a combination of policies, the insurers here provided primary coverage that fully satisfied the no-fault law and additional insurance that is not addressed by the no-fault act. Nothing in the umbrella policy denied or infringed the insureds' contractual and statutory right to recover the mandated benefits. The household exclusion did not affect those mandated benefits but rather operated only as to additional insurance to which the parties agreed. The household exclusion in Travelers' umbrella policy is valid and enforceable, and the district court erred in ruling to the contrary. *See Am. Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn.1983) (holding exclusions in insurance policies generally valid unless they deny coverage required by law or contravene applicable statutes).

Quoting the Kentucky case of *State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 35–37 (Ky.2004), the district court here found the distinction between primary and umbrella insurance to be "a distinction without a difference." But there are fundamental differences in these types of policies. The most glaring is the cost of the insurance. The total annual premium for the primary coverage here was $2,418. The annual cost of the umbrella insurance was $103. A second significant difference is that the umbrella policy by its own terms is not effective unless there is an underlying policy providing coverage consistent with the statutory mandates, and then the umbrella coverage obtains only when the underlying limits are exhausted. A third difference is that the primary policy cannot contain any exclusion that would negate the statutory coverage mandates. But once those mandates have been satisfied by the primary insurance, the umbrella policy has no such statutory restrictions. The two policies are different in their cost, their scope, and their statutory restrictions.

The *Marley* court, interpreting a Kentucky law similar to Minnesota's no-fault act, invalidated a household exclusion even in an umbrella policy as being contrary to public policy. But unlike Minnesota's express purpose of ensuring that there will

be no "uncompensated victims" of automobile accidents—thereby stating the act's underlying policy—*Marley* noted that the "public policy of Kentucky is to ensure that victims of motor vehicle accidents on Kentucky highways are *fully* compensated." *Id.* at 36 (emphasis added). Furthermore, the Minnesota Supreme Court has stated that the object of the no-fault law is "to fully compensate the insured to the *extent of the mandated insurance.*" *Scheibel v. Ill. Farmers Ins. Co.,* 615 N.W.2d 34, 39 (Minn.2000) (emphasis added).

Finally, in our recent holding in *Frey,* we considered the enforceability of a "drop-down" clause in the liability coverage of an automobile insurance policy, that is, a clause that reduced, but did not preclude, liability coverage in certain situations. 743 N.W.2d at 340. The "drop-down" clause in *Frey* reduced liability coverage to the minimum limits defined in the no-fault act when the insured became legally responsible to pay household members. *Id.* But the insurance policy provided the minimum coverage required by the no-fault act even when the drop-down clause was effective. *Id.* at 341. We held that the drop-down clause "does not omit coverage required by Minnesota's automobile insurance laws," and that so long as the minimum requirements of the no-fault act were met the clause was valid and enforceable. *Id.* Our conclusion in *Frey* comports with the public policy of the no-fault act as expressed above, in that the drop-down clause allowed compensation to the insured to the extent of the coverage mandated by the act. Additionally, our conclusion in *Frey* is consistent with our longstanding principle that parties to an insurance contract, as with any contract, may bargain for any terms they wish and which do not violate the law. *See, e.g., Ill. Farmers Ins. Co. v. Glass Serv. Co.,* 683 N.W.2d 792, 802 (Minn.2004); *Ryan,* 330 N.W.2d at 115;

*Bobich,* 258 Minn. at 294, 104 N.W.2d at 24.

## DECISION

The district court erred in declaring that the household exclusion in respondent's umbrella liability was void and unenforceable under the no-fault act, when the primary automobile insurance policy fully complied.

**Reversed.**