# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2933

_____

| | | |
|---|---|---|
| Auto Club Insurance Association, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United |
| v. | * | States District Court for the |
| | * | District of Minnesota. |
| Sentry Insurance, a Mutual Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 16, 2012
Filed: July 2, 2012

_____

Before RILEY, Chief Judge, MELLOY and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

Jason McCann was involved in an automobile accident with Jeffrey Kreml. McCann's insurer, Auto Club Insurance Association, defended McCann against Kreml's personal injury claim. After Kreml and McCann settled, Auto Club sought contribution from Sentry Insurance, the insurer for McCann's employer, claiming Sentry was obligated to provide co-primary coverage for McCann. Auto Club sued in federal district court,[1] invoking the court's diversity jurisdiction under 28 U.S.C.

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

§ 1332. Auto Club appeals the district court's grant of summary judgment to Sentry. We affirm.

## I.    BACKGROUND

McCann was driving his personal vehicle when he rear-ended a vehicle driven by Kreml. Kreml sued McCann and McCann's employer, Life Time Fitness (Life Time), for his injuries, claiming Life Time was vicariously liable because McCann was acting within the scope of his employment when the collision occurred.[2] Auto Club paid $100,000, the policy limit, to settle Kreml's claims. Auto Club agreed to loan McCann the costs of defending Kreml's lawsuit and seek reimbursement from Life Time's insurer, Sentry. Auto Club promised to forgive the "loan" if it could not recover from Sentry.

Auto Club sued Sentry, claiming Sentry provided co-primary insurance coverage and seeking contribution for McCann's defense and indemnity costs. The district court granted Sentry's motion for summary judgment and denied Auto Club's motion, finding the Sentry policy only obligated Sentry to provide excess liability coverage, and McCann had no excess exposure because he settled within the limits of the Auto Club policy.

## II.    DISCUSSION

"We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to [Auto Club] and giving [Auto Club] the benefit of all reasonable inferences." Marlowe v. Fabian, 676 F.3d 743, 746 (8th Cir. 2012). Sentry is entitled to summary judgment if "there is no genuine dispute as to any material fact and [Sentry] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2]Kreml's suit against Life Time is not at issue in this case.

Minnesota contract law governs our interpretation of the Sentry policy. <u>See</u> <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.</u>, 346 F.3d 1160, 1164 (8th Cir. 2003) ("State law governs the interpretation of insurance policies."); <u>Lobeck v. State Farm Mut. Auto. Ins. Co.</u>, 582 N.W.2d 246, 249 (Minn. 1998) ("General principles of contract interpretation apply to insurance policies."). We construe the policy's terms "according to what a reasonable person in the position of the insured would have understood the words to mean." <u>Canadian Univ. Ins. Co. v. Fire Watch, Inc.</u>, 258 N.W.2d 570, 572 (Minn. 1977). Unambiguous language "must be given its usual and accepted meaning," and ambiguous language is interpreted against the insurer. <u>Bobich v. Oja</u>, 104 N.W.2d 19, 24 (Minn. 1960). Language is ambiguous if it "is reasonably subject to more than one interpretation," <u>Columbia Heights Motors, Inc. v. Allstate Ins. Co.</u>, 275 N.W.2d 32, 34 (Minn. 1979), when considered in the context of the entire policy, <u>see</u> <u>Bd. of Regents of the Univ. of Minn. v. Royal Ins. Co. of Am.</u>, 517 N.W.2d 888, 892 (Minn. 1994). "A policy and endorsements should be construed, if possible, so as to give effect to all provisions," <u>Bobich</u>, 258 N.W.2d at 24, and "avoid an interpretation . . . that would render a provision meaningless," <u>see</u> <u>Chergosky v. Crosstown Bell, Inc.</u>, 463 N.W.2d 522, 526 (Minn. 1990). Specific provisions in a contract govern over more general provisions. <u>See</u> <u>Burgi v. Eckes</u>, 354 N.W.2d 514, 519 (Minn. App. 1984).

Auto Club's policy provides that if the covered vehicle "is also covered by other liability insurance, [Auto Club] will pay the ratio of [its] Limit of Liability to the total applicable Liability Limit." Auto Club claims Sentry must indemnify Auto Club because Sentry also provided primary coverage to McCann at the time of the accident. Auto Club's liability limit is $100,000, which Auto Club claims should be combined with Sentry's $1,000,000 liability limit, for a total liability limit of $1,100,000. Auto Club concludes it is responsible for only 9% of McCann's indemnity and defense costs, and Sentry must pay the remaining 91%.

Sentry's policy provides primary coverage to Life Time for "any covered 'auto' you own,"[3] but only excess coverage "[f]or any covered 'auto' you don't own." The Sentry policy explains "you" and "your" refer to the named insured. As the district court determined, "the Sentry policy provides *primary* coverage only for vehicles that are owned by a 'named insured'—and, at most, *excess* coverage for vehicles that are not owned by a 'named insured.'" The dispositive question is whether McCann qualifies as a "named insured."

The following "persons or organizations" are named insureds under the Sentry policy's "controlled-entities endorsement":

> *Life Time Fitness, Inc* and its subsidiaries [list of subsidiary business entities omitted]
>
> *and any other* divisions, subsidiaries and *persons* and organizations *under the control of the named insured*, and any business entity incorporated or organized under the laws of the United States of America . . . [in which] the organization named maintains, during the policy period, an ownership or majority interest.

(emphasis added). Auto Club claims McCann was a named insured because, as an employee, McCann was a "person[] . . . under the control of the named insured," Life Time.

The district court rejected Auto Club's interpretation of the Sentry policy controlled-entities endorsement, explaining such an interpretation was unreasonable when read in the context of two policy provisions that specifically address coverage of employees. The "who-is-an-insured" provision states "[t]he following are 'insureds':"

---

[3]Sentry does not dispute McCann's vehicle was a "covered auto."

a. You [i.e., the named insured,] for any covered "auto".
b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:

. . . .

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

And the "employees-as-insureds" endorsement, which modifies the who-is-an-insured provision, makes "[a]ny 'employee' of yours . . . an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs." Applying Minnesota law, the district court found the most reasonable interpretation of the Sentry policy under the facts of this case indicates the controlled-entities endorsement only applies to entities Life Time controls, and not to employees. Under this interpretation, when employees such as McCann "drive their own automobile within the scope of their employment by Life Time, they are 'insureds' who receive excess coverage under the Sentry policy, not 'named insureds' who receive primary coverage under the Sentry policy." Auto Club argues the district court erred in this determination. We disagree.

The parties identify two possible interpretations of the phrase "persons and organizations under the control of [Life Time]" in the controlled-entities endorsement: Auto Club's interpretation includes employees, while Sentry's interpretation is limited to business entities Life Time owns or controls financially. Though this phrase, standing alone, may have more than one reasonable meaning, it is not ambiguous in context because it is "reasonably subject to" only one interpretation—Sentry's—when viewed with the rest of the policy. See Columbia Heights Motors, Inc., 275 N.W.2d at 34; Bobich, 258 N.W.2d at 24.

Auto Club's interpretation of the controlled-entities endorsement is unreasonable in the context of the entire policy due to how it affects the employees-as-insureds endorsement, which states "[a]ny 'employee' of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your

-5-

personal affairs." The most natural reading of employees-as-insureds endorsement makes only some employees insureds—employees using in the scope of their employment their own vehicles, which Life Time has not hired or borrowed. Such employees are entitled to excess, but not primary, coverage. Those employees driving vehicles they own, which Life Time has not rented or hired, remain excluded from the definition of insureds under the who-is-an-insured provision.

Auto Club's interpretation of the controlled-entities endorsement makes *all* employees acting in the scope of their duties "named insureds" and renders meaningless the distinction the who-is-an-insured provision and the employees-as-insureds endorsement draw between categories of employees. If all employees acting in the scope of their employment are named insureds entitled to primary coverage, Sentry must indemnify such employees regardless of whether another policy also applies. In such a situation, there would be no need for the policy to address excess coverage for these employees—as the who-is-an-insured provision and the employees-as-insureds endorsement do. As the district court noted, the fact the employees-as-insureds endorsement "unambiguously provides that [certain] employees are 'insureds' (and not 'named insureds')" makes it unlikely the parties intended to make the same employees "named insureds" under the more general controlled-entities endorsement. Specific contractual terms should govern over more general ones. See Burgi, 354 N.W.2d at 519. For these reasons, Auto Club's interpretation of the controlled-entities endorsement is unreasonable. See Chergosky, 463 N.W.2d at 526; Bobich, 104 N.W.2d at 24.

The district court also rejected as unreasonable Auto Club's proposed alternative interpretation of the employees-as-insureds endorsement, under which "in your business or personal affairs" modifies "own, hire, or borrow" rather than "using." This interpretation, which Auto Club advances to show the endorsement is not made superfluous by Auto Club's understanding of the controlled-entities endorsement, makes an employee an insured when using a car Life Time does not own, hire, or

borrow, regardless of whether the employee is acting in the scope of his or her employment. The district court reasoned that Auto Club's interpretation would result in the unidiomatic "phrase 'own *in* your business or your personal affairs,'" as opposed to the "entirely idiomatic" "phrase 'us[e] . . . in your business or your personal affairs.'" The district court observed the words "own, hire, or borrow" also appear in subsection (b) of the who-is-an-insured provision, where they reference "a covered 'auto' you [, the named insured,] own, hire, or borrow." By contrast, the employees-as-insureds provision concerns "a covered 'auto you *don't* own, hire, or borrow in your business or your personal affairs." (emphasis added). The district court explained,

> Auto Club's reading of the policy language . . . contrasts two groups of autos: (1) *all* [covered] autos a "named insured" owns, hires, or borrows, and (2) only *some* [covered] autos a "named insured" does *not* own, hire, or borrow—namely, autos the "named insured" does not own, hire, or borrow for (or "in") its business or personal affairs.

The district court determined the more sensible reading of the employees-as-insureds endorsement—with "in your business or personal affairs" modifying "using"—contrasts "two mutually exclusive and collectively exhaustive sets of autos": those a named insured "owns, hires, or borrows," and those it does not. The district court's determination is quite reasonable, and we adopt it.

The district court also noted the second interpretation of the employees-as-insureds endorsement "would lead to an absurd result" of an employee driving his family car on vacation being an insured by virtue of driving a car Life Time does not "own, hire or borrow in [Life Time's] business or [its] personal affairs." That employee absurdly would be entitled to excess coverage under Auto Club's reading.

Finally, Auto Club asserts Sentry's interpretation of the controlled-entities endorsement, adopted by the district court, is problematic because the controlled-entities endorsement refers to "persons" under Life Time's control, which Auto Club

-7-

argues could not simply refer to business entities, but also must refer to employees. However, the word "person" can encompass both individuals and organizations. Cf. Mohamad v. Palestinian Auth., 566 U.S. __, __, 132 S. Ct. 1702, 1707 (2012) (explaining the word "person" often includes corporations, and Congress and the Supreme Court often use the word "individual" "to distinguish between a natural person and a corporation"). The controlled-entities endorsement may still refer to individuals under Life Time's control, just not to employees because employees are excluded by the specific who-is-an-insured provision and employees-as-insureds endorsement. As the district court concluded, "Sentry's interpretation of its policy is not perfect, but it is reasonable—and it is infinitely more reasonable than Auto Club's interpretation." We agree.

## III.  CONCLUSION

We affirm the thorough and well-reasoned opinion and the judgment of the district court.

_____